*Richmond.*

## W. Y. NOELL v. COMMONWEALTH.

### January 18, 1923.

1. VIEW BY JURY—*Governed by Statute—Section 6013 of the Code of 1919.*—In regard to a view of the premises by the jury, the statute (section 6013 of the Code) undertakes to occupy the whole field upon this subject.

2. VIEW BY JURY—*When Ordered—Consent of Parties—Section 6013 of the Code of 1919—Case at Bar.*—Under section 6013 of the Code of 1919, a view ought not to be ordered in any case except upon the motion of one or both parties, or by consent of both parties, which would be tantamount to a joint motion. Although it might be error to order a view over the protest of both parties, where neither party objects, their acquiescence is equivalent to consent.

3. CRIMINAL LAW—*View by Jury—Right of Accused to Accompany Jury in Felony Case.*—When a view is ordered in a felony case, the prisoner always has the right to accompany the jury if he so desires.

4. CRIMINAL LAW—*Right of Accused to be Present—Section 4894 of the Code of 1919—Reason of the Act—Waiver of Right.*—Section 4894 of the Code of 1919 provides that a person tried for felony shall be personally present during the trial. This provision is merely declaratory of a principle of the common law, and that principle does not spring solely from a regard for the welfare of the accused. The public has an interest in every case involving the life or liberty of a citizen, and both in England and in this country it has long been recognized as a settled rule of the common law, based as well upon public policy as upon the interest of the accused, that his continuous presence, from arraignment to sentence, is an essential part of the process of law provided for his trial and without which the courts have no jurisdiction to pronounce judgment upon him. In the absence of constitutional or statutory change, conformity to this rule is essential to jurisdiction, and the accused cannot waive it.

5. CRIMINAL LAW—*Presence of Accused—Must Appear Affirmatively from the Record.*—The record must affirmatively show the presence of the accused throughout the trial.

6. CRIMINAL LAW—*Presence of Accused at Trial—View by Jury as Part or Stage of Trial.*—A view by the jury as authorized by section 6013 of the Code of 1919 is to be regarded as a part or stage of the trial, and

under section 4894 of the Code of 1919 the accused must be present at the view and cannot waive his right to be present.

7. CRIMINAL LAW—*View by Jury—Presence of Accused—View Constituting a Source of Proof—Taking Evidence at View.*—A view by a jury is to be considered as constituting a source of proof for or against the accused. Even in those cases in which it has been held as a general proposition that the presence of the prisoner at a view is not essential, it is never questioned that if evidence is taken during the view in the prisoner's absence, he cannot be convicted.

8. VIEW BY JURY—*Purpose of View—Supplying Evidence—Discretion of Court.*—It has been definitely and repeatedly said by the Supreme Court of Appeals that a view is not intended to supply evidence, but only to explain and clarify it. For this reason it has uniformly left the matter of ordering views laregly to the discretion of the trial courts, and has distinctly approved their action in refusing a view where the manifest purpose was to take evidence on some matter not already before the jury by the evidence adduced. But, while adhering thus strictly to the rule that the primary purpose of a view is never to take or supply evidence, it has always recognized the further rule that in some cases a view may be of value in explaining or rendering clear and understandable the testimony given by witnesses at a trial, and it cannot be doubted that the explanation itself, whether resulting from a mere autoptic inspection, or from verbal explanation of objects, distances, locations, and the like, constitutes evidence of a most material character.

9. CRIMINAL LAW—*Presence of Accused—View by Jury.*—It has always been held in Virginia that whenever anything is to be done at the trial of a felony case which may affect the interest of the accused his presence is indispensable to his conviction—a jurisdictional requisite which he cannot waive. To hold that a view by the jury is not a part of the trial within the meaning and reason of this rule would be to exclude from its operation a proceeding which is far more material and far more susceptible of abuse in the absence of the accused than many others of less importance at which his presence has uniformly been regarded as essential.

10. CRIMINAL LAW—*View by Jury—Presence of Accused.*—A view of the premises by the jury is a part of the trial of a criminal case. The absence of the accused, regardless of whether he asked to attend the view or made any objection to the visit of the jury to the premises without him, and regardless of any irregular conduct by the jury at the view, renders the verdict against him invalid.

11. CRIMINAL LAW—*Presence of Accused—View—Waiver.*—The reason why it is error to deny the accused the privilege of being present at a view by the jury in a case of felony is that the view may have a material effect upon the result of the case, and in Virginia it is the settled rule that a prisoner cannot waive his right to be present "when anything is to be done which can affect his interests."

12. CRIMINAL LAW—*View by Jury—Presence of Accused—Tests and Experiments at View—Case at Bar.*—In the instant case, a prosecution for rape alleged to have been committed at a factory, the fact that the jury made tests and experiments in the factory to determine whether the screams of prosecutrix could have been heard in certain portions of the factory if uttered by her as she claimed, and thereby took further evidence in the case in the absence of accused, merely accentuated the error of a view in the absence of the accused, and demonstrated the possible prejudice which might have resulted to the prisoner, thus bringing the case within the influence of all the authorities, both those for and those against the theory that a view is not ordinarily such a part of the trial in a felony case as to render the presence of the prisoner essential to a valid conviction.

13. CRIMINAL LAW—*Presence of Accused—View by Jury—Felony and Misdemeanor.*—In the instant case, a prosecution for attempt to rape, it was insisted by the Attorney-General that, inasmuch as the defendant, although charged with a felony, was only convicted of a misdemeanor, his presence at a view of the scene of the alleged crime by the jury was not necessary.

   *Held:* That if there would otherwise be merit in this point, it could not avail the Commonwealth in the instant case, because the jury clearly took evidence in addition to making a mere view of the premises.

14. CRIMINAL LAW—*Presence of Accused at Trial—Misdemeanor Cases—Taking of Evidence—Experiments in Evidence.*—Even in a misdemeanor case (as to which the Virginia statute dispenses with the necessity of the prisoner's presence in all cases regardless of the degree of punishment), or in a civil case, the taking of evidence, or making of tests by the jury, otherwise than in the presence of or under the direction of the court, unless agreed to by the party adversely affected thereby, constitutes just grounds for setting aside the verdict, especially where the tests and experiments are made without affirmative proof that the conditions were substantially similar to those existing at the time of the transaction in question.

15. ASSIGNMENT OF ERRORS—*Error not Pointed out in Petition—Insufficiency of Assignment.*—An assignment of error was based upon the action of the trial court in overruling a demurrer to the indictment and a motion to quash the same. No reasons were stated in the lower court for such demurrer and motion, and no error in respect to the action of the trial court thereon was pointed out in the petition upon which the writ of error was granted.

   *Held:* That the assignments were insufficient.

Error to a judgment of the Corporation Court of the city of Danville.

*Reversed.*

The opinion states the case.

*Meade & Meade, Withers, Brown & Benton,* and *Malcolm K. Harris,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

The defendant, W. Y. Noell, was indicted for an attempt to commit rape upon one Lora Cee, a female twelve years of age. The jury found him not guilty of the attempt charged, but guilty of an assault, and fixed his punishment at a fine of five hundred dollars and imprisonment in jail for a term of twelve months. The court, having first overruled a motion for a new trial, pronounced sentence in accordance with the verdict, and thereupon the defendant obtained this writ of error.

The question which we shall consider first arises out of the denial by the lower court of the defendant's motion to set aside the verdict of the jury and grant a new trial. Among the grounds upon which this motion was based were these:

(a) "That during the trial of this cause, as shown by affidavits herewith filed and asked to be made a part of the record, the jury, under the circumstances set out in affidavits, was allowed to view the premises and make certain tests and obtain certain evidence in the absence of the accused, thereby rendering the verdict of said jury void and of no effect.

(b) "That the jury was sent by the court to view the premises and that said jury went through a series of tests as shown by affidavits hereto attached, thereby

constituting each member of said jury a witness without the privilege accorded to the defendant to be present to observe how and under what circumstances the tests were made, and without the privilege of cross-examining the said witnesses."

The material facts with reference to the view by the jury are these:

At the conclusion of all the evidence in the case, and without any motion for a view by either the Commonwealth or the defendant, the following colloquy took place between the court and counsel:

"By the Court: The gentlemen of the jury have expressed a desire to see the premises. Let the sergeant take them over there while we are preparing the instructions in this case.

"By Mr. Harris: With instructions to the sergeant that nobody else goes with them?

"By the Court: Yes, sir."

No protest or objection was made by either side to the suggestion of the court, and the sergeant thereupon took the jury to the scene of the alleged crime, returning with them in about fifty minutes. Neither the prisoner nor counsel on either side nor the judge accompanied the jury, and while they were out for the view the court and counsel were in the judge's chambers discussing the instructions.

No directions were given by the court to the jury or to the sergeant as to the manner in which the view should be made, or as to their conduct at the scene. It was charged that the offense was committed on the fourth floor of a tobacco factory. The prosecutrix had testified that she screamed for some minutes when the defendant made the alleged attempt and before he was finally repulsed. The latter had denied the charge against him, and, in order to corroborate him and to

contradict the prosecutrix, certain witnesses had testi-
fied that they were at certain designated points in the
factory at the time in question and did not hear an out-
cry. Whether they could have heard the screams of the
prosecutrix if she uttered them was, of course, an im-
portant question. While the jury were in the factory
they made certain experiments and tests by dividing
themselves into groups and calling back and forth to
each other from the fourth floor to other floors and
points in the factory. These tests and experiments were
unknown to the defendant or his counsel until after the
verdict was rendered.

We are called upon to decide several independent but
kindred questions arising upon the foregoing facts. The
first of these is whether the trial courts in Virginia have
jurisdictional power to direct a view by the jury in any
case unless requested to do so by one of the parties to
the litigation. There was no such request in this case,
the view having been directed because "the jury ex-
pressed a desire to see the premises." Section 6013 of
the Code, so far as material here, provides that: "The
jury may, in any case, civil or criminal, at the request
of either party, be taken to view the premises or place
in question, or any property, matter or thing relating
to the controversy between the parties, when it shall ap-
pear to the court that such view is necessary to a just
decision." This provision in the statute law of the State
first appeared in the Code of 1849 (chapter 162, page
629, section 10), and with the exception of the words
"civil or criminal," added by the act of December 10,
1903 (Acts 1902–3–4, page 605), has remained un-
changed.

Whether as a matter of common law the trial courts
have the power in their discretion to permit the jury to
visit and view the premises is a question upon which

there is a conflict of authority. *Litton's Case*, 101 Va. 833, 845, 44 S. E. 923. The uncertainty of the law in this respect was doubtless the reason which prompted legislative action on the subject, and in most of the States the matter is now regulated by statute. In 22 Ency. Pl. & Pr., page 1054, cited in *Litton's Case, supra,* the following statement appears in the text: "In the United States the right to a view is generally regarded as being dependent on statutes and is controlled by them. Accordingly it is not the usual practice to grant a view except pursuant to an express statute or by consent of the parties." And in *Litton's Case, supra,* the opinion of Judge Cardwell, after mentioning the conflict of authority as to the power of the court to grant a view at common law, says: "But in our opinion this matter is controlled in this State by statute."

[1, 2] So far as we have been able to find, no case ever came to this court in which a view was ordered prior to the enactment of the statute on the subject, and none since in which the view has been ordered without a motion by one of the parties. The statute undertakes to occupy the whole field upon this subject, and in our opinion a view ought not to be ordered in any case except upon the motion of one or both parties, or by consent of both parties, which would be tantamount to a joint motion. It would, we think, be error to order a view over the protest of both parties, but where, as here, neither party objects, we hold that their acquiescence is equivalent to consent. The contention of the accused that it was error to permit the view in this case because neither party moved for it is, therefore, overruled.

[3] The next inquiry to be disposed of is this: When a view is ordered in a felony case, does the prisoner always have the right to accompany the jury if he so de-

sires? The answer, by what appears to be a clear majority of the decided cases, is in the affirmative. There is no decision upon this particular question in Virginia, nor do we know of one elsewhere which discusses it separate and apart from the question of the prisoner's power to waive the right. In *Litton's Case, supra,* this court was careful to say that it did not appear from the record that the prisoner was not present, or that he was "denied that right." In 16 Corpus Juris, page 816, the text says: "It is generally held that the defendant is entitled to be present when the jury are taken to view the place of the crime, on the ground that this is the taking of evidence and a part of the trial," and a number of cases are cited in support of this statement. Professor Wigmore (3 Wig. Ev., section 1903), takes the opposite view, saying that while the courts would ordinarily not refuse to permit the accused to attend a view if he so desired, there is no proper ground upon which to base an unbending rule that he has the right to attend in every case. The argument of this learned author, however, depends fundamentally upon the assumption that the view is not a part of the trial and that it does not constitute a taking of evidence. The correctness of this assumption, particularly with reference to the law in this State, will presently be considered.

In *Starr* v. *State,* 5 Okl. Cr. 440, 115 Pac. 356 (one of the leading cases in support of the proposition hereinafter discussed that the prisoner may waive his right to be present at the view), the court says that "it would be better and safer for him to accompany the jury, if convenient, to see that nothing improper occurs at the view." And it may be confidently asserted that the authorities generally are in accord in holding that the trial courts ought always to permit the prisoner to attend if he so desires. As said in *State* v. *Slorah,* 118 Me.

203, 106 Atl. 768, 4 A. L. R. 1256: "The right of the accused to be present, if he demands it, is very generally recognized as inherent under a proper consideration of the rights of the accused in a criminal case."

This brings us to the more difficult and more important question, whether an accused person on trial for a felony can waive his right to be present at the view. This precise question has never been definitely decided in Virginia. The decisions in the other States are in such conflict, due partly to varying constitutional and statutory provisions and partly to contrariety of reasoning and opinion among judges in construing such provisions, that we find ourselves unable to rest the decision in this case entirely upon precedent. We must, therefore, undertake to settle the meaning of the pertinent Virginia statutes upon principle, in the light of certain doctrines which have become firmly embedded in the criminal law of the State, and with the aid of such decisions from other jurisdictions as seem to us most in point and best sustained by reason.

[4, 5] Section 4894 of the Code of 1919 provides: "A person tried for a felony shall be personally present during the trial, * * *. But for the purpose of this section, a motion for a continuance, whether made before or after arraignment, shall not be deemed a part of the trial."

We need not here enter into any discussion of the origin and history of this statute further than to say that the first sentence above quoted was merely declaratory of a principle of the common law. 3 Rob. Pr. (old) 267; 1 Chit. Cr. Law, 414; 1 Bish. Cr. Pr., sec. 688. That principle did not spring solely from a regard for the welfare of the accused. The public has an interest in every case involving the life or liberty of a citizen, and both in England and in this country it has long been

recognized as a settled rule of the common law, based as well upon public policy as upon the interest of the accused, that his continuous presence, from arraignment to sentence, is an essential part of the process of law provided for his trial and without which the courts have no jurisdiction to pronounce judgment upon him. Constitutional provisions and statutory enactments not in conflict with such provisions may modify or abrogate this general rule. But in the absence of constitutional or statutory change—and there is none as to felony cases in Virginia—conformity to the rule is essential to jurisdiction and the accused cannot waive it. The decisions in this State are directly and unequivocally to this effect. *Sperry's Case,* 9 Leigh (36 Va.) 623, 33 Am. Dec. 261; *Hooker's Case,* 13 Gratt. (54 Va.) 763; *Jackson's Case,* 19 Gratt. (60 Va.) 664; *Lawrence's Case,* 30 Gratt. (71 Va.) 845; *Bond's Case,* 83 Va. 581, 3 S. E. 149; *Spurgeon's Case,* 86 Va. 652, 10 S. E. 979; *Shelton's Case,* 89 Va. 453, 16 S. E. 355; *Snodgrass' Case,* 89 Va. 687, 17 S. E. 238; *Gilligan's Case,* 99 Va. 816, 37 S. E. 962. That the record must affirmatively show his presence throughout the trial is held in all of these cases; and that he cannot waive his right to be present at any stage is specifically decided in *Jackson's Case, Spurgeon's Case* and *Shelton's Case.* This, as we have seen, was a fundamental principle of the common law, and our courts have rigidly so construed and applied our statutory declaration thereof.

The principle is well illustrated and well stated in *Hopt* v. *Utah,* 110 U. S. 574, 4 Sup. Ct. 202, 28 L. Ed. 262. That was a felony case in which certain challenges to the competency of jurors were tried in the absence of the prisoner, but with his knowledge and without objection on his part. Upon appeal from the Supreme Court of the Territory of Utah to the Supreme

39

Court of the United States, it was'held that the action
of the lower court in permitting the trial of these chal-
lenges in the absence of the prisoner, notwithstanding
his failure to object at any time during the trial, was
such vital error as to vitiate all the subsequent pro-
ceedings.    Section 218 of the Ciriminal Code of Pro-
cedure of Utah in force when the prisoner was tried pro-
vided, just as the Virginia statute does now, that in
felony cases "the defendant must be personally present
at the trial."    In the course of the unanimous opinion of
the court, by Mr. Justice Harlan, it is said:

"We are of opinion that it was not within the power
of the accused or his counsel to dispense with the statu-
tory requirement as to his personal presence at the trial.
The argument to the contrary necessarily proceeds upon
the ground that he alone is concerned as to the mode by
which he may be deprived of his life or liberty, and that
the chief object of the prosecution is to punish him for
the crime charged.    But this is a mistaken view, as well
of the relations which the accused holds to the public as
of the end of human punishment.    The natural life,
says Blackstone, 'cannot legally be disposed of or de-
stroyed by any individual, neither by the person him-
self nor by any other of his fellow creatures, merely upon
their own authority.'    1 Bl. Com., 133.    The public
has an interest in his life and liberty.    Neither can be
lawfully taken except in the mode prescribed by law.
That which the law makes essential in proceedings in-
volving the deprivation of life or liberty cannot be dis-
pensed with or affected by the consent of the accused;
much less by his mere failure, when on trial and in cus-
tody, to object to unauthorized methods.    The great
end of punishment is not the expiation or atonement of
the offenses committed, but the prevention of future
offenses of the same kind.    4 Bl. Com., 11.    Such being

the relation which the citizen holds to the public, and the object of punishment for public wrongs, the legislature has deemed it essential to the protection of one whose life or liberty is involved in a prosecution for felony, that he shall be personally present at the trial, that is, at every stage of the trial when his substantial rights may be affected by the proceedings against him. If he be deprived of his life or liberty without being so present, such deprivation would be without that due process of law required by the Constitution."

[6] It remains, then, to determine whether or not a view by the jury as authorized by our statute is to be regarded *as a part or stage of the trial.* This, it must be carefully remembered, and not the power of the prisoner to waive his presence, if it is a part of the trial, is the open question. If the view is to be so regarded, then the prisoner *must be present,* and no waiver or consent on his part can dispense with this requirement. This is conclusively settled by the above authorities and is not open to debate.

[7] The decision of the open question depends upon whether a view is to be considered as constituting a source of proof for or against the accused. It will hardly be contended that there can be any introduction of proof before the jury in the absence of the prisoner. Even in those cases in which it has been held as a general proposition that the presence of the prisoner at a view is not essential, it is never questioned that if evidence is taken during the view in the prisoner's absence he cannot be convicted.

As already indicated, the decisions in other jurisdictions upon the instant question are in conflict. The opinion in *State* v. *Slorah* (1919), 118 Me. 203, 116 Atl. 768, 4 A. L. R. 1256, while reaching some conclusions in which we are unable to concur, contains such a fair and

exhaustive collection and review of pertinent cases that we shall content ourselves in the main by a mere reference to that case for a citation of the authorities. It will be seen from the opinion therein, and can further be readily verified by a consideration of the cases there cited, that there are two distinct theories, each supported by much authority, which account for the conflict of judicial decision upon the question in hand. Judge Lewis referred to these two theories in *Commonwealth* v. *Brown*, 90 Va. 671, 673, 19 S. E. 447, 448, as follows: "On the one side it is held that the accused must be personally present, because no evidence can be taken in his absence; while, on the other, it is held that the purpose of the view is not to serve as evidence for the jury, but to better enable the jury to understand the evidence offered in court." Accordingly, those courts which have been satisfied that a view by the jury does not serve as a source of proof, but merely illumines the proof adduced in the court room, have usually held that the view is not to be regarded as a part of the trial, while in jurisdictions where it has been looked upon as equivalent to taking evidence, the courts have generally held to the contrary.

The courts nowhere have been more zealous than the courts of this State in holding that a prisoner in felony cases must be present at every stage of the trial when anything is done which can affect his interests. *Gilligan's Case*, 99 Va. 816, 827, 37 S. E. 962. And it follows as a matter of course that if a view by the jury has any probative value or force, it may materially affect the interests of a person on trial for crime. Has it any such value or force? If it has, it is a part of the trial which, under our decisions, can not be waived.

We are aware that until the recent decision in *Lorillard Co.* v. *Clay*, 127 Va. 734, 104 S. E. 384, this court

has in both civil and criminal cases adhered strictly to the theory that a view is not intended to supply evidence, but merely to enable the jury to apprehend it. *Kimball & Fink* v. *Friend*, 95 Va. 125, 143, 27 S. E. 901; *Stanley's Case*, 109 Va. 796, 799, 63 S. E. 10; *Cutchin* v. *Roanoke*, 113 Va. 452, 477, 74 S. E. 403; *Norfolk* v. *Anthony*, 117 Va. 777, 787, 86 S. E. 68; *Abernathy* v. *Emporia Mfg. Co.*, 122 Va. 406, 424, 95 S. E. 418; *Scott* v. *Doughty*, 124 Va. 358, 368, 97 S. E. 802. But notwithstanding the reference in these cases to the primary purpose of a view, in none of them has the court intimated that the view would be wholly without probative value; and much less has it ever said that the proceeding was not capable of materially affecting the result of the trial. *Brown's Case, supra,* is the only one in which the question as to whether the personal presence of the accused could be dispensed with at a view— (which, as above pointed out, necessarily depends solely upon whether the view is a stage of the trial)—has been raised in this State, and it was there expressly left open, not being necessary to the decision. In *Stanley's Case, supra,* the court denied the prisoner's motion for a view; and while saying that "the purpose of a view is not to supply evidence, but to enable the jury to apprehend it," it seems safe to say that if the record had disclosed such uncertainty or confusion in the evidence as that the jury ought to have seen the premises, the court could not well have said that a view thereof might not very materially affect the interests of the accused. In *Cutchin* v. *Roanoke, supra,* it was said that a view "in any case is of indeterminate probative value, and should only be resorted to where there is a reasonable certainty that it will give the jury substantial aid in reaching a right verdict." This language must mean that where there is a reasonable certainty that an inspection of the prem-

ises will aid the jury in reaching a right verdict, such an inspection will have at least some probative force.

[8] We do not think it can be fairly said that this court has ever committed itself to the theory that a view by the jury is in no sense a taking of evidence. It has definitely and repeatedly said that a view is not intended to supply evidence, but only to explain and clarify it. For this reason it has uniformly left the matter of ordering views largely to the discretion of the trial courts, and has distinctly approved their action in refusing a view where the manifest purpose was to take evidence on some matter not already before the jury by the evidence adduced. But, while adhering thus strictly to the rule that the primary purpose of a view is never to take or supply evidence, it has always recognized the further rule that in some cases a view may be of value in explaining or rendering clear and understandable the testimony given by witnesses at a trial. Can it be doubted that the explanation itself, whether resulting from what Professor Wigmore calls a mere autoptic inspection, or from verbal explanation of objects, distances, locations, and the like, constitutes evidence of a most material character? If a witness on the trial should describe a certain location and its surroundings, a plat or drawing thereof would in nearly every instance be very helpful and enlightening as an aid to a clear understanding of the witness, but such a plat or drawing, however accurately and correctly it might be conceded to conform to the testimony, could not be lawfully considered by the jury in a felony case if introduced in the absence of the accused. Why? Because that would be taking evidence in his absence and would violate the jurisdictional requirement of his presence throughout the trial.

If, however, in the foregoing discussion we have not

correctly interpreted the meaning of former decisions in this State, there can be no question as to where the court now stands upon the effect which may result from a view by the jury.   In *Lorillard* v. *Clay, supra,* Judge Burks, in delivering the opinion, while holding that the lower court was right in refusing a motion to permit the jury to visit and inspect the scene of the accident because the manifest purpose of the motion was to enable the jury "to take further evidence upon a subject upon which there was a conflict of evidence," nevertheless quoted with approval the following from 1 Greenleaf on Evidence (16th Ed. by Wigmore), pp. 333-4: "While, as already pointed out, autoptic preference is to be distinguished from evidence both testimonial and circumstantial in the strict sense of the word, it is at any rate an additional source of belief or proof over and above the statements of witnesses and the circumstantial evidence.   Its significance in this respect has often been discussed by courts in ruling upon instructions as to the nature of jury views; and in spite of some opposing precedents the generally accepted and the correct doctrine is that a view furnishes a distinctly additional source of proof, *i. e.,* the thing itself as autoptically observed."

Proceeding further in the *Lorillard Case,* the opinion said: "We do not wish to restrict views to cases where they will aid the jury in applying the testimony adduced on the trial.   There are cases where a view will furnish 'a distinctly additional source of proof, *i. e.,* the thing itself as autoptically observed.'   In such case the view should be granted as it would be 'of substantial aid to the jury in reaching a correct verdict.' *Abernathy* v. *Emporia Mfg. Co., supra.*"

This is the latest expression in Virginia, pertinent to the present inquiry, upon the subject of views by

the jury, and it is in accord with what we consider the better reason and authority.

In *State* v. *McCausland*, 82 W. Va. 525, 96 S. E. 938, a view was held by the jury during a part of which the accused was absent, and while he was thus absent the jury made certain experiments for the purpose of testing the accuracy of the testimony of one of the witnesses. In the course of a careful opinion by Judge Ritz, the following appears:

"As to whether or not a view by the jury of some place connected with the matter before it is the taking of evidence, is a question upon which there is a very decided conflict of authorities. Many of the courts hold that it is not, but is a part of the deliberations of the jury in arriving at a verdict; others say it is not the taking of evidence, but is simply allowing the jury to see the physical conditions in order that it may better understand the oral testimony; while still others assert that it is the presentation of physical conditions to the jury from which it may be informed as to some pertinent matter of inquiry. The purpose of introducing evidence is to inform the jury of the transaction in regard to which the trial is had, and anything pertinent to that end is proper for the purpose. Frequently in the trial of such cases material objects are introduced before the jury. In homicide cases the garments worn by the deceased are often introduced for the purpose of showing the place at which the wounds were inflicted. Can it be said that this is not evidence? It is stronger and more convincing to the jury than the oral testimony of any witness could possibly be. There can be no difference in the proffer of objects to the jury in the court-room and such exhibition by taking the jury to view such objects, when they are not susceptible of being brought into court. The reason the jury is taken

to view the ground is simply because it is physically impossible to bring it into the courtroom, and it is therefore necessary, in order that the jury may have all the light obtainable upon the subject to which the inquiry is directed, that it be taken and shown these objects which form a part of the subject of inquiry. In this case can it be doubted that the actual demonstration made upon the ground to show whether or not certain objects are visible from a certain point was the strongest sort of evidence that could be introduced upon that question?   Likewise, the view of the jury was the very strongest evidence as to the distance between the scene of the tragedy and the place where the witness was standing whose testimony was questioned.   A dozen witnesses might testify that they observed this tragedy from a certain point, and the jury would not believe a single one of them, if from the observation made upon the ground the physical conditions were such as to preclude the possibility of the truth of the witnesses' statements.   This view is fully sustained by what we consider the better authorities.''

The opinion in the *McCausland Case* also deals with the question of waiver, and while indicating that there would have been no reason upon the facts of that case to hold that the accused had waived his right to be present, the West Virginia Supreme Court said, just as we must say in this case: "Under our decisions the right of the accused in a felony case to be present at every stage of the trial is one which he cannot waive, and the decisions cited by the Attorney-General holding that such a right is one that can be waived are not in conformity with our holding.''   See also, in support of the proposition that a view is essentially a part of the trial in a felony case, *Foster* v. *State*, 70 Miss. 755, 765, 12 So. 822; *People* v. *Bush*, 68 Cal. 623, 10 Pac. 169;

*Benton* v. *State*, 30 Ark. 328. Indeed, if we bear in mind that in Virginia, as in West Virginia, the accused cannot waive his right to be present throughout the trial, citation of authorities which in their logical and necessary effect sustain the decision in the *McCausland Case* might be indefinitely multiplied. See 16 C. J. 816, and cases cited; 42 L. R. A., note, page 368.

It must be apparent that no matter how carefully the court may instruct the jury as to their conduct at a view, and no matter how willing they may be to obey instructions, the proceeding in its very nature affords more or less opportunity for inaccuracy and irregularity in the opinion and impression which the jury will thereby obtain. Whether we regard the proceeding as the taking of evidence or merely as an explanation and illumination of the testimony given or to be given in court, no one can doubt that it is expected and intended to have a material bearing upon the conclusions reached by the jury. Indeed, it is perfectly well settled by our own decisions that the view ought never to be granted unless the court is satisfied that it will be of material aid to the jury in passing upon the evidence. Nor can we agree with Professor Wigmore and other authorities holding that the view, so far as the question of the presence of the accused is concerned, is like a consideration of the evidence by the jury after they have retired to their room. Nothing can be lawfully considered there unless it has been regularly brought to the attention of the jury in court during the course of the trial and in the presence of the accused.

The case of *Taylor* v. *Commonwealth*, 90 Va. 109, 17 S. E. 812, is relied upon by the Attorney-General, but has no controlling influence upon the question under consideration. In that case, after the conclusion of the evidence and after the jury had gone to their room to

consider of their verdict, they sent for, and without objection from the other side were allowed to have, a gun which had been introduced in evidence by the defendant and with which the Commonwealth charged that the prisoner had killed his victim.    The gun was taken apart and inspected in the jury room, and this had not been done during the course of the trial.    This court refused to interfere with the verdict and judgment of the lower court, holding, first, that the only evidence of this action on the part of the jury in their room was in the form of affidavits by the jurors themselves, which could not be received and considered; and then further holding, by *obiter dictum*, that it was not prejudicial error for the jury to take apart and inspect the gun in the absence of the prisoner.    This latter holding was not essential to the decision of the case; and it is to be especially observed that the gun had been first introduced in evidence by the defendant during the progress of the trial.    This fact is stressed in the written opinion of the court.

[9] It has always been held in Virginia that whenever anything is to be done at the trial of a felony case which may affect the interests of the accused his presence is indispensable to his conviction—a jurisdictional requisite which he cannot waive.    To hold that a view by the jury is not a part of the trial within the meaning and reason of this rule would be to exclude from its operation a proceeding which we all know is far more material and far more susceptible of abuse in the absence of the accused than many others of less importance at which his presence has uniformly been regarded as essential.    Indeed, the courts in this State had gone so far as to hold that after arraignment a motion for a continuance was within the rule, and that it would be error to pass upon such a motion in his absence.    Later cases

had cast some doubt upon this holding, but it was thought necessary by the revisors, in order to make it clear that the statute requiring the presence of a person at every stage of the trial did not include a motion for a continuance, to amend the statute, and this was done by adding the words, "but for the purposes of this section a motion for a continuance whether made before or after arraignment shall not be deemed a part of the trial."

[10-12] We hold that a view of the premises by the jury is a part of the trial of a criminal case. We have not reached this conclusion hastily. The question involved, with more or less circumstantial variety, was presented in three separate cases at the last session of this court, namely, *Fetters* v. *Commonwealth, ante* p. 501, 115 S. E. 692; *Pierce* v. *Commonwealth, post* p. 635, 115 S. E. 686, and the instant case. It was fully argued and full briefs were filed by the Attorney-General and his associates for the Commonwealth and by learned and able counsel representing the several defendants. The decision we make here is apparently opposed by authority for which we entertain great respect. See, among others, Wigmore on Evidence, *supra; State* v. *Slorah, supra; People* v. *Thorn,* 156 N. Y. 286, 50 N. E. 947, 42 L. R. A. 368, and note thereto; *Starr* v. *State, supra; People* v. *Auerbach,* 176 Mich. 23, 141 N. W. 869, Ann. Cas. 1915B, 557 and note. The conflict, however, between these authorities and our conclusion here is more apparent than real. Most of the cases which have held that the prisoner's presence at a view is not essential could be distinguished in their facts from the instant case, and many of them could be further differentiated by reason of peculiar statutory provisions, and especially by the fact that in many other jurisdictions it has been held that a prisoner may waive

his right to be present at any or all stages of the trial. Such is clearly not the law in Virginia. And it must also be remembered that the authorities are practically uniform in holding that the accused always has the right to attend a view if he does not expressly or by implication waive it, and that it is error to deny him that privilege. Undoubtedly the reason why it is error to deny such privilege is that the view may have a material effect upon the result of the case. With this consideration in view, and remembering that in Virginia the settled rule is that a prisoner cannot waive his right to be present "when anything is to be done which can affect his interests," it becomes apparent that the conclusion which we have reached is, after all, in substantial harmony with the authorities generally upon the subject.

We are of opinion that the absence of the accused, regardless of whether he asked to attend the view or made any objection to the visit of the jury to the premises without him, and regardless of any irregular conduct by the jury at the view, rendered the verdict against him invalid, and that the court erred in refusing to set the same aside and grant a new trial. The fact that the jury made tests and experiments in the factory, and thereby took further evidence in the case, merely accentuated the error and demonstrated the possible prejudice which may have resulted to the prisoner, thus bringing the case within the influence of all the authorities, both those for and those against the theory that a view is not ordinarily such a part of the trial in a felony case as to render the presence of the prisoner essential to a valid conviction. Upon this latter point there is practically no conflict of authority.

[13, 14] It is insisted by the Attorney-General that inasmuch as the defendant, Noell, although charged

with a felony, was only convicted of a misdemeanor, his presence was not necessary, citing *Jones' Case*, 31 Gratt. (72 Va.) 831, 834-5, and *Price's Case*, 33 Gratt. (74 Va.) 819, 826, 36 Am. Rep. 797. If there would otherwise be merit in this point, it cannot avail the Commonwealth anything in this case because the jury clearly took evidence in addition to making a mere view of the premises. This was entirely out of the scope of an ordinary view, and even in a misdemeanor case (as to which our statute dispenses with the necessity of the prisoner's presence in all cases regardless of the degree of punishment), or in a civil case, such taking of evidence, or such tests made by the jury, otherwise than in the presence of or under the direction of the court, unless agreed to by the party adversely affected thereby, constitutes just grounds for setting aside the verdict, and this is especially true where, as in this case, tests and experiments are made without affirmative proof that they were made under conditions substantially similar to those existing at the time of the transaction or occurrence which forms the subject of the controversy.

It may be added in this connection that in the West Virginia case of *State* v. *McCausland, supra,* in which the court held that the presence of the prisoner was essential and could not be waived by him, the indictment charged murder and the verdict found him guilty of involuntary manslaughter which was only a misdemeanor. The court did not accord any effect to this latter fact, but the particular question now under consideration does not seem to have been directly raised or decided.

It is sometimes said, though it has not been suggested in this case, that a prisoner might refuse to attend a view, and that the court in that event ought not to be

expected to compel him to accompany the jury; and from this it is argued that the prisoner's presence is not indispensable to the legality of the view. This argument does not appeal to us, and is clearly unsound. A prisoner charged with a felony, if in jail, might refuse to leave his cell, or, if out on bail, might refuse to appear in court for the trial, and yet in neither of these contingencies could the trial proceed in his absence. If he refused to leave the jail, the court would have its officers to bring him there by force. If he were out on bail and refused to appear, the court would forfeit his recognizance. But, in either case, if the court should proceed with the trial in his absence, the proceeding would be a nullity.

It often happens that the view is had on the motion of the prisoner. In such a case, if he should not be at the view because he had expressly said that he did not desire to accompany the jury, the question would at once and very naturally present itself as to why he should thereafter be permitted to challenge the proceeding. But exactly the same question would arise if the court should, at his request, allow him to remain in jail or out on bail while the trial was being held. The conclusive answer to both questions is that the law does permit him, even by express consent, to thus abrogate a jurisdictional rule of procedure.

There is an assignment of error based on the alleged insufficiency of the evidence to support the verdict, but as the case must go back for a new trial, we express no opinion upon this point.

[15] Another assignment was based upon the action of the court in overruling a demurrer to the indictment and a motion to quash the same. No reasons were stated in the lower court for such demurrer and motion, and no error in respect to the action of the trial court

thereon is pointed out in the petition upon which this writ of error was granted.   The assignments upon these points are insufficient, and will not be further considered.   *Puckett* v. *Commonwealth*, 134 Va. 574, 113 S. E. 853, and cases cited.

The objections to the instructions are without merit and do not require any discussion, and the remaining contention upon which we are asked to reverse the judgment will not arise upon the next trial.

The judgment complained of will be reversed and the cause remanded for a new trial to be had not in conflict with the views herein expressed.

*Reversed.*

PRENTIS, J. (concurring in the result):

I concur in the result in this case because when the jury took the view of the premises they made certain experiments and tests without the knowledge of the accused and in his absence.   I do not concur, however, in the conclusion that upon a mere view of the premises the presence of the accused is essential to the jurisdiction.   I think that, while it is a privilege which should never be denied, it may nevertheless be waived.   For this there is respectable, if not ample, authority, and the cases so holding are, in my opinion, supported by better reasons than those which hold otherwise.