Zackus H. INGRAM, Appellant,

v.

C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellee.

No. 10517.

United States Court of Appeals
Fourth Circuit.

Argued June 2, 1966.

Decided Oct. 4, 1966.

E. Whitehead Elmore, Richmond, Va. (Court-assigned counsel), (Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., on brief) for appellant.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia (Robert Y. Button, Atty. Gen. of Virginia, and James Parker Jones, Asst. Atty. Gen. of Virginia, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, SOBELOFF, Circuit Judge, and HEMPHILL, District Judge.

SOBELOFF, Circuit Judge:

This appeal is from the District Court's denial of an application for a writ of habeas corpus by Zackus H. Ingram, who was tried jointly with a codefendant and convicted by a jury on July 13, 1948 in the Corporation Court of the City of Danville, Virginia. The charge was

robbing a night watchman of $6.00 in cash and a billfold valued at $2.50, and the sentence was 20 years in the penitentiary. Both defendants were represented by the same attorney.

The indictment stated the name of the victim—the prosecution's chief witness—as James Coates. In preparation for the trial, Ingram's attorney conducted an investigation, and found no previous criminal record of anyone with that name. In the course of the trial, however, it was learned that the victim's name was actually Capes, not Coates. After the conclusion of the trial, the attorney discovered that James Capes *did* have a criminal record of serious significance—a conviction for perjury. Defense counsel discussed this discovery with the trial judge in chambers in connection with the motion to set aside the verdict or for a new trial. During the hearing on this motion Ingram was not present, and not until 16 years later did Ingram learn that his lawyer had discovered the prosecuting witness' perjury conviction or that a motion, based on this after-discovered evidence, had been made and denied. Ignorant of the above circumstances, Ingram took no appeal from his conviction.

In June, 1964, Ingram petitioned the state court for a writ of habeas corpus, and was granted leave to proceed in forma pauperis. He alleged a variety of grounds for relief with which we are not concerned on this appeal. On December 3 of that year, a hearing was held at which Ingram was represented by a court-appointed attorney. Like the petitioner, this attorney had no knowledge of Capes' perjury conviction until the attorney who had represented Ingram in the 1948 trial, called as a witness, testified to his discovery of this fact. As shown by the transcript of this hearing, however, neither the judge nor the court-appointed attorney pursued this development further.

Eight days after the state habeas hearing, Ingram informed his court-appointed counsel that he wished to appeal from the denial of his petition. His counsel forwarded a copy of Ingram's letter containing this request to the clerk of the Corporation Court, and then wrote to Ingram informing him that his appointment was only to represent him in that court. He offered Ingram no guidance for the prosecution of his appeal other than the following cryptic advice: "In order for you to perfect your appeal you will have to comply with the rules of the Supreme Court of Appeals of Virginia." Ingram wrote in reply that he did not know how to "perfect" an appeal and that he had not seen a copy of the rules to which his counsel referred. Reiterating his desire to appeal, he asked how he might obtain a copy of the transcript of the hearing free of charge, but counsel did not respond.

Ingram's next step was to write the clerk of the Corporation Court, inquiring whether a final judgment had been entered and whether he could obtain a copy. The clerk, in a letter no more helpful than that of the attorney, responded: "If you desire to perfect an appeal to the Supreme Court of Appeals of Virginia in this matter, it will be necessary that you follow the usual procedure for appeals and the law governing the same."

Persevering in his effort, Ingram wrote to the clerk on February 8, 1965, requesting a copy of the transcript in order to present his case to the appellate court. The clerk replied, on February 16, that the time had elapsed within which he could perfect his appeal. He told Ingram that his request for a transcript was being denied because he failed to file a formal notice of appeal and assignment of error, and failed to tender a transcript within the 60 days provided by the rules. In truth, only 47 days had then elapsed from the date the judgment was filed. The clerk assigned as an additional reason for denying Ingram a transcript that his request had not been submitted in "proper form." Once more, on February 24, Ingram wrote to the clerk saying that he had been under the impression that the court would appoint

counsel to aid him in prosecuting his appeal, and that he thought that the time for appeal ran from the date of entry of the final order.[1]

Having reached an impasse in the state courts, Ingram turned to the federal court. He petitioned for writ of habeas corpus in the United States District Court for the Eastern District of Virginia, and was permitted to proceed in forma pauperis. He had no counsel in that court, however, nor was he afforded a hearing. The District Court dismissed the petition, and Ingram now appeals to this court.

The picture thus presented is that of of a series of lapses from normal procedure which in combination seem to have worked a denial of due process. We turn to a more detailed examination of the relevant circumstances.

## I. THE 1948 PROCEEDINGS

### A. *Separate Trial*

■ Virginia grants to any defendant jointly indicted with another for a felony the right to elect a separate trial. Va. Code Ann. § 19.1–202 (1960) (formerly § 4895). See Barnes v. Commonwealth, 92 Va. 794, 23 S.E. 784 (1895). Ingram contends that he was not advised of this statutory right. There is no indication from the record of the 1948 trial that Ingram was informed by the court, and his defense counsel has testified that he did not remember whether he advised Ingram of this right, although it was his general custom to do so. We are inclined to the view that Ingram should have been informed by his attorney of his right to a severance, giving him the opportunity of making a decision in respect to this. The statutory right afforded Ingram by the Commonwealth of Virginia was rendered meaningless by the failure to make him aware of the

existence of such a right. However, standing alone, failure of an attorney to advise his client of the right of severance is not necessarily ground for relief.

### B. *Capes' Perjury Conviction*

■ Contrary to the State's contention, Ingram is not required to show a deliberate suppression of Capes' record of conviction in order to support his claim that he was denied a fair trial. The question is whether the defendant was deprived of an effective defense because the critical information was unavailable to counsel at the trial. It is immaterial that this unavailability may have been occasioned by the prosecutor's error in misnaming the prosecuting witness in the indictment rather than by deliberate concealment. See e. g., Levin v. Katzenbach, 363 F.2d 287 (D.C. Cir. 1966); Barbee v. Warden, 331 F.2d 842 (4th Cir. 1964); United States v. Consolidated Laundries Corp., 291 F.2d 563 (2d Cir. 1961); Griffin v. United States, 87 U.S.App.D.C. 172, 183 F.2d 990 (1950). See Note, The Prosecutor's Constitutional Duty to Reveal Evidence to the Defendant, 74 Yale L.J. 136 (1964), which traces the trend of decisions from the earlier emphasis on protecting the integrity of the judicial process from official abuse to a growing concern with the possible harm to the defendant. Accordingly, the motives of the prosecutor are of diminished importance, while the fairness of the trial has become a major theme.

■ After-discovered evidence, which is merely impeaching, cumulative or corroborating will not ordinarily invalidate a verdict, but if such evidence is of a character to raise a substantial likelihood that it would have affected the result if known at the trial, its nondisclosure cannot be ignored.[2] It is reason-

---

1. Since the date of entry was December 31, at the time this letter was directed to the clerk, Ingram was still within the 60-day limit for filing an appeal.

2. Cf. Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), holding that false testimony which did not concern any of the facts of the case, but reflected solely on the credibility of the witness, tainted the conviction sufficiently to necessitate a new trial. The court said in that case that "[t]he jury's estimate of the truthfulness

able to think that a jury, if made aware that the Commonwealth's principal witness was a convicted perjurer, would have been disposed to discount his testimony. In the absence of adequate independent evidence, the jury might well have entertained a reasonable doubt of Ingram's guilt.

### C. *In Camera Proceedings*

■ Defense counsel, having shortly after the trial learned of the serious infirmity in the State's case, namely, that its chief witness was a convicted perjurer, clearly should have informed Ingram of this fact. To Ingram this would have been crucial information, for had he been told of Capes' conviction, he would doubtless have wished to appeal —and not without some hope of success.

The fact that, following the trial, Ingram was kept in ignorance of the motion for a new trial, its basis, and its disposition in the judge's chambers, compounded the effect of the nondisclosure of the evidence of the perjury conviction at the trial. He was denied the opportunity to consider whether to seek redress in a higher state court. His failure to act earlier was due to no fault of his, sixteen years having passed before he even knew of the court's action.

Numerous decisions have held that a defendant does not lose his right of appeal where he gave his attorney instructions to appeal but the latter neglected to act. See e. g., Coffman v. Bomar, 220 F.Supp. 343 (M.D.Tenn. 1963); People v. Tucker, 61 Cal.2d 828, 40 Cal.Rptr. 609, 395 P.2d 449 (1964); Note, Effective Assistance of Counsel for the Indigent Defendant, 78 Harv.L.Rev. 1434, 1446–47 (1965). If the rights of the defendant are protected in such cases, the same result should follow *a fortiori* where the lawyer and the trial judge, in possession of not insubstantial

grounds for appeal, seal off the information from the defendant.[3]

■ Virginia adheres tenaciously to the rule that a defendant has the right to be present at every stage in a felony trial, meaning that the accused must be present *in person* at any proceeding which might affect his interest. Noell v. Commonwealth, 135 Va. 600, 115 S.E. 679, 30 A.L.R. 1345 (1923). See Near v. Cunningham, 313 F.2d 929 (4th Cir. 1963). This right to be present at every stage of the trial is considered so fundamental that it may not be waived. Hopt v. People of Territory of Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884). Virginia courts have expressly held that the defendant's presence is required when a motion for a new trial is heard or argued. Powell v. Commonwealth, 182 Va. 327, 28 S.E.2d 687 (1944); Staples v. Commonwealth, 140 Va. 583, 125 S.E. 319 (1924); Bond v. Commonwealth, 83 Va. 581, 3 S.E. 149 (1887). It was strongly asserted in the last-cited case that whatever the rule might be in other localities, "it is the absolute rule of law in Virginia" that in felony cases a prisoner "must be present in court when his motion for a new trial is made, and when it is acted on by the court." Id. at 586–587, 3 S.E. at 151. It is worth noting that the matter under discussion in the judge's chambers was no abstruse technical point a defendant might not be expected to comprehend, but a fact which he would readily grasp and one which doubtless would have influenced his decision in respect to an appeal. What happened here illustrates the wisdom of Virginia's strict rule requiring a defendant's presence when a motion for a new trial is heard.

### II. THE 1964 PROCEEDINGS

The 1964 hearing in the state court on the petition for habeas corpus was all

and reliability of a given witness may well be determinative of guilt or innocence * * *." 360 U.S. at 269, 79 S.Ct. at 1177.

3. Cf. Cochran v. State of Kansas, 316 U. S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453

(1942), and Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951), holding that interference by the state, through one of its officials, agents or officers, with a statutory right of appeal is a violation of the equal protection clause of the 14th Amendment.

but useless. The court-appointed attorney was ill-equipped to prepare Ingram's case, since he had no knowledge of the in camera disposition of the motion based on the discovery of the perjury conviction, and when he fortuitously learned of it at the hearing, he failed to pursue the matter. Ingram's attempts after the hearing to gain access to the appellate court of the state were thwarted by acts and omissions of the state itself—the clerk's failure to supply information as to steps necessary to perfect the appeal or to arrange for the appointment of counsel, the refusal to furnish a transcript, and the erroneous rejection of the appeal as untimely. It is noteworthy that Virginia has recognized exceptions to strict compliance with its Rules, even when the failure to meet all the requirements has been that of trained counsel. Jackson v. Prestage, 204 Va. 481, 132 S.E.2d 501 (1963); Vick v. Siegel, 191 Va. 731, 62 S.E.2d 899 (1951). Yet here not only was Ingram, an uneducated, indigent layman, held to strict technical compliance with the Rules, but through error of the officers of the state, he was denied the 60 days for appeal as provided in the Rules.

The state contends that since Ingram did not, prior to the appeal in this court, raise the issue of his exclusion from the proceedings in the trial judge's chambers, he is barred from raising it without first exhausting available state remedies. In light of the roadblocks that Ingram has repeatedly encountered, this contention borders on the farcical. It would be less than just to send him back to the state court again on this issue, in view of the fact that he did not even learn of the in camera conference until the 1964 post-conviction hearing; and thereafter, the conduct, witting or unwitting, of Ingram's court-appointed attorney and officials of the state combined to frustrate his persistent attempts to prosecute an appeal.

■ Cumulatively, the extraordinary derelictions and departures from normal procedure in Ingram's 1948 trial, in subsequent proceedings growing out of

that trial, and in the 1964 state post-conviction hearing, coupled with the state's repeated frustration of his attempts to appeal the denial of his writ of habeas corpus, if established, present a case of denial of due process and equal protection, calling for relief. Looking to the substance of the matter, a *prima facie* case has been stated, whether treated as the petitioner contends, as a denial of the right of effective assistance of counsel, or as a deprivation of the right of appeal.

■■ We have under the customary rule treated the petitioner's allegations as true, there having been no hearing in the District Court. Nothing we have said, however, displaces the District Court's discretion to accept adequately supported state court findings, or in the alternative to make independent findings on the record to be developed at the hearing. The case is therefore remanded for a hearing. If the allegations of the petition are proved or conceded, the District Court should order Ingram's release unless the Virginia authorities decide to retry him within a reasonable time.

Reversed and remanded.