McCAIN, Judge
(dissenting):
For reasons other than those arrived at by the trial court, the majority affirms denial of defendant’s motion to vacate. I disagree.
Defendant questions denial of his Rule 1 motion which alleged newly discovered evidence that would probably have changed the outcome of his trial, had it been known and presented therein.
Pursuant to an investigation concerning sale and possession of marijuana, two detectives placed one Daniel Gruosso under surveillance. They followed a car driven and owned by him, in which defendant had become a passenger shortly before it was stopped.
After observing articles being thrown from the car, the detectives stopped the vehicle. An examination of the items revealed marijuana wrapped in foil. Both Gruosso and the defendant were arrested *421 and separately charged with possession of marijuana. Gruosso pled guilty and was placed on probation.
At trial, without a jury, defendant was found guilty primarily upon the detectives’ testimony relating to the aforementioned incident.
This court affirmed the conviction without opinion and I dissented.[1]
At the time of arrest the following statement was taken from Gruosso:
“Q — When you first observed the police unit attempting to stop you, what did you and Diamond decide to do with the marijuana ?
“A — You see what happened was, when we pulled out from Scott’s, there was a car behind me and Í knew it wasn’t you, then you pulled around the other car and I told Diamond somebody is coming and then I turned left and you came up kind of fast and I kept going straight and then we passed the light and I heard you honk your horn and when we saw it was the police, we started throwing everything out, papers and the marijuana and when we threw everything out, we stopped the car.
a ‡ >}c
“Q — Did Richard Diamond know that there was- marijuana in your car?
“A — I told him it was in the back seat when you were following us and I said get rid of it and he threw it out of the car.
«* * *
“Q — Then, when did Diamond in fact know that the car contained marijuana?
“A — After you started following us.
<< >}i
“Q. — ‘Danny’, I would like to ask you once more, when did Diamond first learn of your having marijuana in your car?
“A — After you started following us.”
Neither the defendant nor his trial counsel was aware of this written statement.
Defendant contends the statement verifies his lack of knowledge of marijuana being in the car, however, in its order the court stated:
“That a close reading of the wording of Daniel Gruosso’s statement shows conclusively that the petitioner was guilty of the crime for which he was tried and convicted. Mr. Gruosso’s statement shows that for a period of time before throwing out the marijuana, the petitioner had knowledge of its character as marijuana. Further, the affirmative act of the petitioner in throwing the foil out of the window, while at the same time having such knowledge conclusively proves the commission of the crime of possession. So rather than being exculpatory, Mr. Gruosso’s statement is in fact incriminating as to the issue of petitioner’s guilt on the charge of possession.
“The Court therefore finds as a matter of law that because of the aforesaid nature of Mr. Gruosso’s statement, nothing in it could have exculpated or exonerated the petitioner at his trial and that even if it had been brought to the attention of the judge at petitioner’s trial the verdict would have been the same and that its non-availability has not resulted in any prejudice inuring to the petitioner.” (Emphasis added.)
Contrariwise, I believe Gruosso’s statement was exculpatory as to defendant and similar testimony could have exonerated him had it been given during trial.[2] Regarding the “exculpatory” aspect of the statement, the majority and I are in accord for they state, “the written statement, had *422 it been admissible, would clearly have been exculpatory in nature as to appellant rather than incriminating as the trial court seemed to feel.”
During the Rule 1 hearing, it was established the defendant met Gruosso at a drive-in restaurant. Gruosso was under surveillance. Gruosso and defendant drove another man home, returned to the restaurant and after awhile drove away. They were followed for seven or eight minutes by the police before being stopped. When Gruosso discovered he was being followed, he told the defendant of the marijuana and to throw it out. They both did. Observing this, the police immediately stopped the car.
Without anything to the contrary the reasonable inference arising is that the act of throwing the marijuana from the car was simultaneous with the defendant acquiring knowledge of its presence.
Giving allowance for the physical and emotional reactions of any normal young man, I cannot conclude that possession of marijuana was established against the defendant beyond reasonable doubt.
As I see it the primary issue is whether “with reasonable diligence” defendant could have discovered the exculpatory remarks and produced them at trial.[3] The trial judge did not treat this point.
From the Rule 1 hearing, we learn this: Gruosso’s statement was taken after defendant’s release from the police; the statement was with the solicitor’s office and in the file of Gruosso which was assigned to a different assistant solicitor than the one who prosecuted the defendant; defendant’s prosecutor was unaware of the statement; and defendant’s trial counsel talked to Gruosso who testified concerning it during the Rule 1 hearing as follows:
“Q — You don’t remember. Was it before or after he was tried?
“A — Before he got convicted?
“Q — Yeah.
“A — That, I really don’t know. It was about two years ago, I know that.
‘t * * *
“Q — And what did he ask you? If you had given a statement to the police?
“A — No, I don’t think so.
<< ‡ * *
“Q — And he never asked you about any statement that you may have given or didn’t ask you whether you gave a statement to the police, that’s Mr. Weil ?
“A — I remember the gentleman vaguely. If he did ask me that, I would have to see it in paper. Whether or not he answered it because it’s been a long time.”
Obviously Gruosso did not recall when he discussed the case with defendant’s trial counsel or exactly what was said.
For this reason, I would remand this cause for a more complete evidentiary hearing, where testimony of defendant’s trial attorney (who was not present at the Rule 1 hearing) appears to be indispensable.
The majority, however, concludes that neither the written statement nor its contents qualify as newly discovered evidence. The hearsay quality of the written statement encircles the majority’s reasoning, as does the fact that knowledge of the statement would have led solely to Gruosso who could have corroborated only those events already known by and testified to by the defendant.
Naturally, the defendant knew the facts of the case as he experienced them. The real issue surrounds why Gruosso did not testify and the testimony, if any, that defendant could have extracted or reasonably anticipated to extract from him at trial. The surfacing of Gruosso’s written statement supplies us with the present conclusion that such testimony would now be exculpatory to the defendant. The exculpatory nature of such testimony lends more credence to a conclusion that it would have *423 affected the results of the trial rather than being deemed corroborating evidence only. See Ingram v. Peyton, 4 Cir. 1966, 367 F.2d 933, wherein it is stated:
“After-discovered evidence, which is merely impeaching, cumulative or corroborating will not ordinarily invalidate a verdict, but if such evidence is of a character to raise a substantial likelihood that it would have affected the result if known at the trial, its nondisclosure cannot be ignored.”
In Levin v. Katzenbach, 1966, 124 U.S. App.D.C. 158, 363 F.2d 287, it is stated:
“Relief would be available, of course, had the government deliberately presented a false picture of facts * * * by * * * actively suppressing evidence known to be exculpatory. But appellant urges in this appeal that the court below erred when it limited itself to findings on the question of deliberate suppression * * * a number of circuits have recently held that the deception that results from negligent nondisclosure is no less damaging than that which is a product of guile and that such nondisclosure entitles the defendant to relief. We find the reasoning of such cases persuasive and essential to the fair administration of criminal justice especially in view of the disadvantages facing the accused in the trial process.”
Assuming that complete inadvertence on the part of all parties resulted in the nondisclosure of Gruosso’s statement, the character of such exculpatory comments is of such magnitude that I cannot ignore its absence on the record before me.
The hearsay quality of Gruosso’s written statement is over reached by his present availability and apparent willingness to testify. Furthermore, the propriety of reviewing a hearsay statement when considering newly discovered evidence has been confirmed. Giles v. State of Maryland, 1967, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737.
Considering public prosecution in light of the view that the ends of justice in a conviction are met when the whole truth has been. presented, I would therefore remand for further proceedings consistent herewith.

. Diamond v. State, Fla.App.1968, 216 So. 2d 269 (cert. den. Fla.1969, 222 So.2d 751). Jly dissent was erroneously omitted from this citation.

. See Fice v. State, Third District Court of Appeal, 232 So.2d 191, opinion filed January 21, 1970.

. CrPR 1.600(a) (3).