**UNITED STATES of America ex rel. George PAXOS**

v.

**Alfred T. RUNDLE, Supt.**

**Civ. A. No. 70–2781.**

United States District Court, E. D. Pennsylvania.

Dec. 21, 1971.

**316**

Robert F Simone, Philadelphia, Pa., for plaintiff.

Arlen Specter, Dist. Atty., W. Mark Sendrow, Asst. Dist. Atty., Philadelphia, Pa., for defendant.

## OPINION AND ORDER

HAROLD K. WOOD, District Judge.

Presently before the Court is relator's petition for a writ of habeas corpus.

Relator and two co-defendants were convicted of aggravated robbery, conspiracy to commit burglary and burglary with intent to commit robbery. Relator was sentenced to a prison term of two to ten years. He appealed his conviction to the Pennsylvania Superior Court which affirmed *per curiam*. Commonwealth v. Paxos, 217 Pa.Super. 734, 268 A.2d 148 (1970). The Supreme Court of Pennsylvania denied allocatur on August 21, 1970.

Among other grounds, relator alleges that he was denied the right to a fair trial when the prosecuting attorney argued to the jury that one of relator's alibi witnesses committed perjury even though the prosecutor knew at the time that there was evidence to the contrary which had not yet been introduced. After conducting a full evidentiary hearing on the contentions raised by relator and after reviewing the transcript of relator's trial, we conclude that his petition for a writ of habeas corpus must be granted.

At trial, relator presented as witnesses eight of his fellow employees at Hershman's Sheet Metal Company including the company superintendant and shop foreman. Each of these witnesses testified that on May 4, 1967, the day of the robbery, relator was at work. Relator also introduced time sheets which indicated that he worked on that day. The time sheets also indicated the number of hours worked by the other employees of Hershman's. After the defense had rested, the district attorney reviewed the time sheets and discovered that they contained no notation of any working hours on May 4 for George Tancini, one of relator's alibi witnesses. Prior to that time neither the prosecutor nor defense counsel was aware of this fact.

The district attorney then contacted Iris Felman, a bookkeeper at Hershman's, and asked if she would testify on rebuttal that, although George Tancini had testified that he saw relator at work on the day of the robbery, the time sheets indicated that he himself was not

at work. Miss Felman stated that she could not so testify until she reviewed Tancini's payroll records for the week following the robbery. Upon reviewing these records, she discovered that Tancini was paid the following week for the day of the robbery. She concluded that he had merely been late in turning in his daily time sheets to the paymaster and that he was at work on May 4. The district attorney advised her that under the circumstances he would not call her to testify. He then told relator's attorney about the time sheets, the payroll records, his conversation with Miss Felman and his decision not to call her as a rebuttal witness.[1] Thereafter, in his closing argument to the jury, the district attorney stated that the time sheets in evidence showed that George Tancini was not at work on the day of the robbery and that the jury could infer that he committed perjury when he testified that he saw relator at work on that day. The jury was never apprised of the payroll records showing that Tancini was paid for that day or the statement of Miss Felman explaining the omission in the time sheets. Relator's counsel raised an objection to the prosecutor's comment, but the Court ruled that the argument was not improper.

■ The law is clear that the suppression by the prosecution of material evidence favorable to an accused is violative of due process and can give rise to habeas corpus relief. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963); Ingram v. Peyton, 367 F.2d 933 (4th Cir. 1966). The nondisclosure of evidence which is merely impeaching, corroborating or cumulative will ordinarily not give rise to habeas corpus relief. However, where "such evidence is of a character to raise a substantial likelihood that it would have affected the result if known at the trial, its nondisclosure cannot be ignored." Ingram v. Peyton, *supra*.

■ In Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), the Court held that the false testimony of a witness that he had received no promise of consideration in return for his testimony sufficiently tainted defendant's conviction even though the false testimony went only to the witness' credibility. The Court recognized that "[The] jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence". *Id.* at p. 269, 79 S.Ct. at p. 1177. Likewise in *Ingram* the Court reversed and remanded the denial of a habeas corpus petition where the prosecution failed to disclose at trial that its chief witness had a prior conviction for perjury. The Court concluded that had this evidence been presented to the jury, it might well have discounted the witness' testimony and entertained a reasonable doubt as to the defendant's guilt.[2]

It is evident, therefore, that the payroll records and statement of Miss Felman were not immaterial because they only related to the credibility of an alibi witness. On the contrary we consider them highly material. Practically the entire defense in this case was that of alibi. The crucial determination for the jury was whether it believed relator's alibi witnesses. The district attorney's argument challenging the credibility of

---

1. In his opinion denying relator's motion for a new trial, the trial judge concluded that the district attorney kept secret from defense counsel the existence of the payroll records indicating that Tancini worked on the day of the robbery. However at pages 1888–9 of the notes of testimony of relator's trial defendant's counsel stated that he learned from the district attorney that the records in evidence show-

ed that Tancini did not work on that day, that there were other records showing that he did, that the district attorney had contacted Iris Felman and that he had decided not to call her as a witness.

2. In *Ingram*, the prosecution inadvertently misnamed its chief witness and consequently the defense was unable to discover his past perjury conviction.

the alibi testimony when he was fully aware of other evidence rebutting his argument and supporting the alibi testimony may quite likely have caused the jury to discount the alibi testimony when it might otherwise have found it sufficient to create a reasonable doubt as to the relator's guilt. The nondisclosure in this case was at least as material as that in *Ingram*. There the nondisclosure was that a prosecution witness had committed perjury in the past. In this case the nondisclosure was of records negating the argument that an alibi witness committed perjury in the very matter being tried. We therefore find no merit in the Commonwealth's somewhat cryptic claim that the issue of the credibility of the alibi witnesses was "tangential at best".

 It is true, of course, that this case is factually different from the *Napue* and *Ingram* cases. The problem here is not that the prosecution used perjured testimony as in *Napue* or that it completely suppressed evidence favorable to the accused. Nevertheless we believe that the conduct of the prosecution sufficiently prejudiced relator to constitute a denial of due process. The prosecutor did disclose to defense counsel the information regarding the time sheets, payroll records and statement of Iris Felman. However, defense counsel was effectively foreclosed from ever introducing these matters into evidence. At the same time that the prosecutor disclosed this information to the defense, he stated that he would not call Iris Felman as a rebuttal witness to testify that George Tancini did not work on the day of the robbery. The reasonable implica-

tion of this statement was that the district attorney was satisfied with Miss Felman's explanation that Tancini was at work and that this issue would not be raised. Thus, although the payroll records were highly material to indicate that Tancini worked on May 4, counsel reasonably declined to introduce them where he believed that the question of whether Tancini worked was not at issue and would not be put into issue. Thereafter the district attorney did raise this issue in his closing argument.[3] At that point defense counsel had no opportunity to negate this argument through the payroll records. Although the Commonwealth suggests that he could have moved to have the case reopened, the colloquy between counsel and the Court after the prosecutor's argument, wherein the defense objected to the argument and advised the Court of the other evidence, indicates that such a request would have been unavailing. (N.T. 1884–1902). Thus, although the prosecutor did disclose the evidence in question to the defense, he effectively precluded the defense from using it and thereafter, in total disregard of this evidence, argued that Tancini committed perjury. We believe that this conduct so prejudiced relator as to deny him his right to a fair trial.[4]

 The Commonwealth also argues that while the undisclosed payroll records might have been material if they conclusively corroborated Tancini's testimony that he was at work, they did not do this. It is argued that they demon-

---

3. We do not mean to imply that the prosecutor intentionally misled defense counsel in this regard.

4. We note that ordinarily the fact that defense counsel knew of the evidence in question would preclude relator from raising nondisclosure as a ground for habeas corpus relief. However, because, as previously stated, the failure of the defense to introduce the evidence was not due to a lack of diligence on its part but rather to the statement of the prosecutor that the issue to which the evidence pertained would not be raised, relator should not be so precluded. *Cf.* Thomas v. United States, 343 F.2d 49, 54–55 (9th Cir. 1965) where the defense had a reasonable opportunity to act upon the information which it learned.

strated only that Tancini was subsequently paid for the day of May 4, a fact not necessarily consistent with his having actually been at work. While we certainly agree that the payroll records do not prove beyond peradventure that Tancini worked on May 4, that does not render them immaterial. The question of how much weight the records should be accorded was for the jury to decide. See United States ex rel. Thompson v. Dye, 221 F.2d 763, 767 (3rd Cir. 1955). The records presented a substantial inference that Tancini was at work, especially when coupled with the testimony of Iris Felman. Consequently they could quite possibly have caused the jury to believe that Tancini worked and accord the alibi testimony sufficient added weight to alter the verdict.

It is also significant that the nondisclosure in this case did more than affect the credibility of a single witness. Rather it affected the credibility of all of relator's alibi witnesses. On cross-examination, although he was unaware at the time of the omission of Tancini's hours from the time sheets, the district attorney asked all of the alibi witnesses whether the other alibi witnesses were at work on the day of the robbery. All of the witnesses answered affirmatively. Thus each alibi witness specifically testified that George Tancini was at work on May 4. The reasonable inference for the jury to draw, then, was that if George Tancini committed perjury the other alibi witnesses also committed perjury. Consequently there is a substantial likelihood that the nondisclosure caused the jury to discount the testimony of George Tancini when it would otherwise not have done so, and also caused it to discount the testimony of the other alibi witnesses.

As we conclude that the above ground raised by relator is sufficient to warrant the granting of a writ of habeas corpus, we need not discuss the other grounds raised in his petition.