# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## COMMONWEALTH V. BROWN.

### MARCH 29th, 1894.

1. CRIMINAL PROCEEDINGS—*Homicide—Witness.*—Where on trial of one of two persons jointly indicted for murder and electing to be tried separately, the commonwealth declines to call the other defendant as its witness, and at the suggestion of prisoner's attorney, the court calls him, and he is examined first by the court, then by commonwealth's attorney, and lastly by prisoner's attorney : *held,* no error.

2. IDEM—*Conduct of jury—Absence of accused.*—A mere casual visit to scene of homicide by jury during recess whilst taking exercise under custody of officer in charge, in prisoner's absence, when there is no proof of prejudice, or of conversation regarding the scene, or of any influence on the jury thereby : *held,* no ground for setting aside the verdict.

3. IDEM—*Exclusion of witness.*—Where after order of trial court that the witnesses be examined out of the hearing of each other, one not summoned, but present as a spectator, has heard part of the evidence, was called as witness for commonwealth : *held,* no ground for his exclusion. *Hey's Case,* 32 Gratt., 946.

4. IDEM—*Evidence of another offence.*—Where on trial for murder prisoner had been, without objection, proven to have confessed that on night of homicide certain goods had been stolen, and a witness was allowed to testify that those goods were found in prisoner's house when he was arrested for the homicide : *held,* as prisoner was not prejudiced by the testimony, its admission, though irregular, was not a reversible error.

5. IDEM—*Evidence at examination.*—Where notes of evidence at prisoner's examination before the magistrate, were taken by private stenographer of commonwealth's attorney at his own expense and for his own use : *held,* prisoner has no right to have those notes.

6. IDEM—*Malice aforethought—Instructions.*—To constitute murder, the killing must be predetermined, yet the design to kill need not have existed for any particular length of time and may be formed at the moment of committing the act, and an instruction on a murder trial, that it is not

necessary that the design of killing should have existed "for any length of time": *held,* not misleading as being equivalent to telling the jury that a killing on sudden impulse is murder.

7. IDEM—*Deadly weapons.*—Malice may be presumed from the use of a deadly weapon in the previous possession of the slayer.

8. IDEM—*Principal in second degree.*—An accused may be guilty of murder in the second degree, though the fatal shot was fired by another, if the latter was engaged jointly with accused in a felonious act and fired the shot in attempting to accomplish their joint escape, the accused being present aiding and abetting the one who fired it.

9. IDEM—*New trial—Bill of exceptions.*—Where neither the facts nor the evidence is certified in the record, this court cannot review a decision of the trial court overruling a motion for a new trial.

Error to judgment of corporation court of the city of Norfolk, pronounced June 1, 1893, sentencing the plaintiff in error, Madison Brown, to be hanged for the murder of John Dollard, in that city, on the 7th day of April, 1893. Opinion states the case.

*W. L. Williams,* for plaintiff in error.

*Attorney-General R. Taylor Scott,* for commonwealth.

LEWIS, P., delivered the opinion of the court.

The prisoner was jointly indicted with one Boush for the murder of John Dollard. Upon their arraignment the defendants elected to be tried separately, and the first question arising upon the trial of the plaintiff in error, Brown, relates to the action of the court in calling as a witness the said Boush. It appears from the bill of exceptions that the attorney for the commonwealth declined to call Boush as a witness for the prosecution, and that he was called by the court at the suggestion of his own attorney. It also appears that, upon being called, he was examined first by the court, then by the attorney for the commonwealth, and afterwards by the counsel for the prisoner. Whether the examination by the prisoner's

counsel was a waiver of the previous objection to Boush's being called as a witness, it is unnecessary to decide, because in any event the action of the court was the valid exercise of a discretion to call any witness who was present at the transaction, according to the rule recognized in *Hill's Case*, 88 Va., 639.

The next objection is founded upon the alleged misconduct of the jury in visiting, during the trial, without the consent and in the absence of the prisoner, the scene of the homicide. Upon this point the facts appear from the affidavit of the officer in charge of the jury, who testified that during a recess of the court the jury requested him to be allowed to take a walk up to James and Queen streets; that he at first demurred, as the weather was threatening, but that they insisted on going, and that they all walked up to the corner of Queen and James streets, he with them; that he was behind, and in no way directing or suggesting their movements; that when they got to the corner of the said streets some of the jurors looked into the alley where the alleged murder was committed, and looked at the premises; that as soon as he came up he asked them to come out of the lane, and that they did so. He said further that they looked at the premises not more than a minute or two, and that no one spoke to them during their walk or at the premises.

In the argument at the bar a number of decisions from other States were cited to show that it is error for a view to be had in a felony case in the absence of the accused. The decisions on the subject seem to be founded upon statutes, and are by no means harmonious. On the one side it is held that the accused must be personally present, because no evidence can be taken in his absence; while, on the other, it is held that the purpose of the view is not to serve as evidence for the jury, but to enable the jury better to understand the evidence offered in court. 12 Am. & Eng. Ency. of Law, 369, and cases cited.

We need not, however, go into this question in the present

case, because upon the facts stated the objection cannot be sustained. The case is very similar to the well considered case of *State* v. *Brown*, 64 Mo., 367, in which case the facts were these: The jury during the trial went on, and looked at, the ground where the deceased was killed; but the witness could not state that they were looking at the ground with a view of understanding how the killing was done, nor was it shown that they said anything about it, or that they conversed among themselves in regard to the ground. The Supreme Court of Missouri held that this was not misconduct on the part of the jury, and added: "If, on such grounds as are here relied upon, a verdict must be set aside, then, when the offence is charged to have been committed at a county seat, generally a small village, over the whole extent of which one has a view from the court-house window, and in which not unfrequently the crimes for which persons are prosecuted are committed, the jury would have to be consigned to a dungeon to consider of their verdict, lest they might accidently see some locality mentioned in the testimony. The place where the killing occurred in this case was not in doubt. There was no conflict of evidence on that subject; no question whether any witness who testified was in a position to see what he related, and no possibility that the defendant could have been prejudiced by the conduct of the jury."

Wharton lays it down that a mere casual visit by the jury to the scene of the *res gestæ*, and without influence on the jury, as where the jury, when taking exercise under the custody of an officer, walk by such scene, is no ground for setting aside a verdict; and the proposition is fully supported by authority. Whart. Crim. Pl. & Pr. (9th ed.), sec. 834.

We see no good ground for applying a different rule in the present case. The visit of the jury to the scene of the homicide was merely casual, and could have had no influence upon them. There was no conversation between them regarding the premises, nor, for aught that is shown by the record, was there any conflict of evidence upon any point in the case. How,

then, it was possible for the accused to have been prejudiced by the action of the jury, it is not easy to see.

The next assignment of error is based upon the bill of exceptions taken by the prisoner to the action of the court in allowing the witness, Dollard, to testify for the commonwealth. Dollard had not been summoned as a witness, but was present as a spectator. The point of the prisoner's objection to his testifying was that he had heard a part of the evidence, and ought, therefore, to be excluded, as the court had previously ordered that the witnesses be examined out of the hearing of each other. This was no ground for excluding the witness, nor would it have been ground for excluding him even if he had been summoned as a witness before the order was made. In *Hey's Case*, 32 Gratt., 946, it was said that while a witness who disobeys such an order is liable to punishment for contempt, he is not for that reason to be excluded, but that the practice is to allow him to be examined, subject to observation on his conduct in disobeying the order; and it is now well settled by the English decisions, that the judge, in such a case, has no right to exclude the witness, though at one time it was held to be in his discretion to do so.

Nor was there reversible error in admitting the evidence of the witness, Holland, which is the subject of another bill of exceptions. The witness merely testified that certain goods which were found in the house of the prisoner, when he was arrested for the homicide in question, belonged to him (Holland), and that they were stolen from his store the night of the alleged murder. The prisoner was not prejudiced by the evidence, although not strictly admissible, because he had previously stated, as a part of his confession, which was proven without objection, that the goods were stolen from the witness' store on the night of the killing. Neither the evidence nor the facts are certified, and there is nothing in the bill of exceptions to warrant a reversal of the judgment because of the admission of the evidence in question.

The refusal of the trial judge to compel the attorney for the commonwealth to furnish the prisoner with certain steno- graphic notes of the evidence taken before the examining magistrate is also assigned as error. It appears that the notes were taken at the instance of the attorney for the common- wealth, for his own use, and at his own expense, by a private stenographer, and the prisoner, therefore, had no more right to them than to any other private property of the prosecuting attorney.

After the evidence had been closed the court instructed the jury, among other things, that it was not necessary that the design to kill should have existed "for any length of time." This, it is insisted, was tantamount to telling the jury that a killing on sudden impulse is murder. We do not think so. The idea sought to be conveyed to the jury evidently was that the design to kill need not have existed for any considerable time; for it was immediately added that "it will be sufficient if the jury believe from the evidence that at the moment of firing the shot the accused intended to kill or to do great bodily harm," etc., which is in accordance with the established rule of criminal law. In *McDaniel's Case,* 77 Va., 281, it was held, in conformity with numerous previous decisions, that while, to constitute murder, the killing must be pre-determined, yet the design to kill need not have existed for any particular length of time; that it may be formed at the moment of the commis- sion of the act.

In the present case the court substantially repeated to the jury the instruction just commented on, with the additional remark, that malice may be presumed from the use of a deadly weapon in the previous possession of the slayer, which is en- tirely correct. *Hill's Case,* 2 Gratt., 594; *Hall's Case,* 89 Va., 171.

The next bill of exceptions states that the prisoner moved the court to instruct the jury as follows: "The court instructs the jury that unless they believe from the evidence; beyond a

reasonable doubt, that the shot which killed Dollard was fired by Madison Brown (the prisoner), with the wilful, deliberate, and premeditated design of killing, then the offence would not be murder in the first degree." To this the court added : " Unless they further believe that, though the shot was fired by another, such other was engaged jointly with the prisoner in the commission of a felonious act; that it was fired in the attempt to accomplish their common escape; and that the prisoner was present aiding and abetting the person who fired the shot "; and as thus modified the instruction was given.

As neither the evidence nor the facts are certified, we do not see very clearly the relevancy of the instruction; but as an abstract proposition the instruction is right. An eminent writer on criminal law, after observing that to render a person a principal in the second degree his presence at the fact need not be a strict actual immediate presence, such as would make him an eye or ear witness of what passes, but may be a constructive presence, adds : "·So that if several persons set out together, or in small parties, upon one common design, be it murder or other felony, or for any other purpose unlawful in itself, and each takes the part assigned him ; some to commit the fact, others to watch at proper distances and stations to prevent surprise, or to favor, if need be, the escape of those who are more immediately engaged; they are all, provided the fact be committed, in the eye of the law, present at it," and therefore principals. 1 Russ., Crimes, 22.

The next point, viz : that the corporation court postponed the execution of its sentence more than thirty days after the then next term of this court, contrary to section 4051 of the Code, need not be considered, as it is not a practical question in the case.

There was also a motion for a new trial, which was overruled; but as the record embodies neither the facts nor the evidence, we must assume that the ruling of the court in this particular was right.

The overruling of the motion in arrest of judgment is the subject of the next and last assignment of error; but no reasons are urged in support of the objection, and we find nothing in the record to support it.

There is no error in the judgment to the prejudice of the prisoner, and the same must be affirmed.

JUDGMENT AFFIRMED.