# Richmond

ELVIN BRICKHOUSE, JR. v. COMMONWEALTH OF VIRGINIA.

March 4, 1968.

Record Nos. 6712, 6713, 6714.

Present, All the Justices.

*J. Hugo Madison* (*Edward Delk*, on brief), for plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for defendant in error.

EGGLESTON, C.J., delivered the opinion of the court.

At the September, 1966 term of the court below three separate indictments were found against Elvin Brickhouse, Jr., a Negro,

charging him, respectively, with rape, robbery and abduction of Vera Lynn Shaw, a white woman.[1] On November 22 the defendant pleaded not guilty to each of the charges, by consent a jury was waived, and he was tried by the court. After hearing the evidence the court dictated an opinion finding the defendant guilty on all three charges and entered an order to that effect. Subsequently, after consideration of a presentence report, it sentenced the defendant to death upon the charge of rape and to imprisonment in the State Penitentiary on the other charges.

Through court-appointed counsel the defendant has appealed, claiming that (1) the finding of the trial court that he was identified beyond a reasonable doubt as her assailant is contrary to the law and the evidence and not supported by the evidence; (2) the court erred in admitting the testimony of William E. Whitehouse, Jr., who was present in the courtroom and heard part of the testimony of the prosecutrix after he and the other witnesses had been excluded from the courtroom; and (3) the court erred in sentencing him to death on the charge of rape, because "such punishment for the alleged offense is reserved in the State of Virginia for Negroes and thereby violates this defendant's constitutional rights as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States."

Vera Lynn Shaw, the prosecutrix, a young woman nineteen years of age, testified that on Sunday, July 24, 1966, about 5:00 A. M., she left her home on West Thirtieth Street, in the City of Norfolk, for the purpose of catching a bus at Granby and Twenty-first Streets which would take her to the place of her employment, a restaurant near the Naval Operating Base. After walking eastwardly along Thirtieth Street, she turned and walked southwardly down Granby Street. As she passed Twenty-eighth and Granby Streets she heard voices and laughter which attracted her attention to a house on Twenty-eighth Street, a short distance from Granby. Looking in that direction, she saw "three colored men on the porch." As she continued down Granby Street she saw two of the men coming off the porch and following her. One of these she identified as the defendant Brickhouse.

When she reached Twenty-second and Granby Streets the defendant Brickhouse grabbed her from behind and pushed and

---

[1] This defendant had been previously charged in separate warrants issued on July 25, 1966. At a preliminary hearing on August 12, he was ordered held for the grand jury.

knocked her down. The other man who had been following her, later identified as Bernard Ross Fogg, then came across the street and joined in the attack on her. When she was knocked down her pocketbook, containing $2.60, fell out of her hand and was picked up by Fogg. She pleaded with her attackers, saying: "Take anything, take the money, take anything you want, just leave me alone." Brickhouse replied: "We aren't going to hurt you," and commanded in foul language that she shut her mouth.

After she had been knocked to the ground and beaten in this manner, she was grabbed by the two men and dragged to the rear of a near-by warehouse. There her assailants, despite her screams, tore off her clothes and took turns in raping her, Fogg first and then Brickhouse. During the assault Brickhouse kicked her in the face. After completing their sexual attack the two men left the scene. The prosecutrix, with only a blouse to protect her nude person, ran along Twenty-second Street to the next intersection and thence to Twenty-first Street where she was seen by M. J. Deans, a passing motorist, who, at her request, took her to the Norfolk General Hospital. Deans' testimony corroborated that of the prosecutrix as to the circumstances under which he came to her assistance and their trip to the hospital.

Dr. Karl Opderbeck testified that he examined the prosecutrix at the hospital shortly before 6:00 A. M. on the day of the attack. He said that she was "extremely upset" and stated that she had been beaten and raped about 5:00 o'clock that morning. On her face were "black and blue marks" which showed that she had been severely beaten. He took smears from her vagina and turned them over to the police. A subsequent examination of these showed that they were positive for seminal fluid. An examination of the trousers and undershorts of the defendant Brickhouse likewise showed the presence of seminal fluid stains.

Marvin J. Hawk, who lived at 106 West Twenty-eighth Street, testified that he was one of the three persons sitting on the porch as the prosecutrix passed along Granby Street on the day of the alleged assault. He said that he had known Brickhouse for "about a year" prior to the incident and that Brickhouse was one of the two men who left the porch and followed the girl down the street.

[1] The defendant does not question the sufficiency of the evidence to establish the fact that the prosecutrix was cruelly assaulted and raped. His contention is that the evidence was insufficient to warrant a finding by the trial court that he was identified beyond

a reasonable doubt as one of her assailants. We do not agree with that contention.

The prosecutrix clearly and positively identified the defendant as one of the two men who had attacked her. She said that during the assault she got "a good look at the two persons" and was able to recognize them. As she stated, "After being raped and having their faces crammed in your face, it wouldn't be hard to recognize them any place. The face would stick in your mind a long time."

She gave the police a description of her assailants but said that while she was in the hospital she was shown a number of pictures from which she was unable to identify either of them. However, she said that when she next saw the defendant Brickhouse at the preliminary hearing in the Municipal Court she picked him out and identified him as one of her assailants and so told her companion, William E. Whitehouse, Jr., who was seated by her side at the hearing. In this she was corroborated by Whitehouse.

The defendant contends that the evidence shows that the prosecutrix did not identify him at the preliminary hearing until after the attorney for the Commonwealth had pointed him out to her as one of her assailants. On the contrary, the record shows that despite a vigorous cross-examination the prosecutrix insisted that she had identified the defendant as soon as he came into the room and so told her companion Whitehouse, and that thereafter her identification was confirmed by the attorney for the Commonwealth.

The defendant did not take the stand nor was there any proof of alibi or direct evidence in contradiction of his identification.

It is true that the burden was on the Commonwealth to prove the identity of the accused beyond a reasonable doubt. *Terry* v. *Commonwealth*, 174 Va. 507, 516, 6 S. E. 2d 673, 677 (1940), and cases there cited. Clearly, we think the related evidence, which the trial court sitting as a jury has accepted, was sufficient to meet this requirement and warrant a finding that the defendant was identified beyond a reasonable doubt as one of the persons who assaulted and raped the prosecutrix. Such finding is conclusive on appeal. *Shields* v. *Commonwealth*, 147 Va. 640, 644, 136 S. E. 495, 496 (1927); *Booth* v. *Commonwealth*, 165 Va. 794, 798, 183 S. E. 257, 259 (1936).

[2] The defendant next contends that the trial court erred in admitting in evidence the testimony of Whitehouse who was present in the courtroom and heard a part of the testimony of the prosecutrix after he and the other witnesses had been excluded from the court-

room. At the commencement of the trial, on motion of the defendant, the witnesses were ordered to be excluded and pursuant to this command Whitehouse left the courtroom. Later, while the prosecutrix was testifying, the court's attention was directed to the fact that Whitehouse was present and he was ordered to leave the courtroom.

When Whitehouse was called as a witness for the prosecution counsel for the defendant objected to his testifying, on the ground that he had heard a part of the testimony of the prosecutrix. The trial court then inquired into why Whitehouse had returned to the courtroom after having been excluded. His explanation was that he understood that someone had called his name and directed his return to the courtroom. It turned out that Whitehouse had mistaken a call for "Whitehurst," the attorney for the Commonwealth, as a call for him, "Whitehouse." Upon hearing this explanation the court held that the presence of Whitehouse in the courtroom was due to "an honest mistake" and overruled the defendant's objection to his testifying.

Whitehouse testified that he was in the courtroom for "approximately two minutes" and that while he heard a part of the testimony of the prosecutrix he did not hear her say that she had identified the defendant to him at the preliminary hearing.

Code § 8-211.1, as amended [Repl. Vol. 1957, Cum. Supp. 1966], provides: "In the trial of every case, civil or criminal, the court, * * * shall upon the motion of any party, require the exclusion of every witness whose presence is not necessary to the proceedings; * * * ."

In conformity with this statute the trial court excluded the witnesses on the motion of counsel for the defendant. There is nothing in the language of the statute to support the argument of counsel for the defendant that the presence of a witness in the courtroom, in disobedience of the order of exclusion, disqualifies such witness from testifying. On the contrary, it is generally held that it is within the sound discretion of the trial court to permit the testimony of a witness who has violated an order directing his exclusion from the courtroom. See 53 Am. Jur. Trial § 33, p. 48; 23 C. J. S. Criminal Law § 1013, pp. 1086, 1087. We have adopted that view in this State. See *Hey* v. *Commonwealth*, 32 Gratt. (73 Va.) 946, 948 ff., 34 Am. Rep. 799 (1879); *Brown* v. *Commonwealth*, 90 Va. 671, 675, 19 S. E. 447 (1894); *Jarrell* v. *Commonwealth*, 132 Va. 551, 564, 110 S. E. 430 (1922).

In the present case we think the trial court was fully warranted

in permitting Whitehouse to testify and that the defendent thereby suffered no prejudice.

[3] Finally, the defendant assigns error to the action of the trial court in sentencing him to death on the charge of rape, because, he says, "such punishment for the alleged offense is reserved in the State of Virginia for Negroes and thereby violates this defendant's constitutional rights as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States."

The gist of this assignment is that the defendant was denied due process of law and equal protection of the laws guaranteed by the Federal Constitution, because, he says, he was sentenced under a statute [Code § 18.1-44, Repl. Vol. 1960][2] which, while valid on its face, is discriminatorily enforced against Negroes in this State.

We are fully aware of the principle that a statute fair on its face but administered or applied in a discriminatory manner runs afoul of the equal protection clause of the Federal Constitution. *Snowden* v. *Hughes,* 321 U. S. 1, 8, 64 S. Ct. 397, 401, 88 L. ed. 497 (1944), and cases there cited. But it is equally well settled that "purposeful discrimination may not be assumed or merely asserted" but "must be proven." *Swain* v. *State of Alabama,* 380 U. S. 202, 205, 85 S. Ct. 824, 827, 13 L. ed. 2d 759 (1965), citing *Tarrance* v. *State of Florida,* 188 U. S. 519, 520, 23 S. Ct. 402, 403, 47 L. ed. 572 (1903), and *Martin* v. *State of Texas,* 200 U. S. 316, 320, 321, 26 S. Ct. 338, 339, 50 L. ed. 497 (1906). See also, *Snowden* v. *Hughes, supra,* 321 U. S. at 8, 64 S. Ct. at 401.

In the present case the record of the proceedings in the trial court is devoid of any evidence of the alleged discriminatory application of the statute. Indeed, the point was not raised in the court below. The only support for the claim of such alleged discrimination is the reference in the defendant's brief to an article in the Washington and Lee Law Review, Vol. XXII, p. 43 (Spring 1965), entitled "The Incidence of the Death Penalty for Rape in Virginia." In this article are statistics, said to have been compiled from the records of the Virginia State Penitentiary and other sources, showing the infliction of death penalties on white and Negro defendants convicted of rape from 1820 through 1964. From these statistics the author of that

---

[2] The pertinent portion of Code § 18.1-44, as amended by Acts 1960, ch. 358, p. 422, provides: "If any person carnally know a female of sixteen years of age or more against her will, by force, * * * he shall, in the discretion of the court or jury, be punished with death, or confinement in the penitentiary for life, or for any term not less than five years. * * * "

article concludes that, "Since 1908, when the electric chair was installed in the Virginia State Penitentiary, forty-one men have been executed for rape, thirteen for attempted rape, one for rape and robbery, and one for attempted rape and highway robbery. All of these men were Negroes." Washington and Lee Law Review, Vol. XXII, at 43.

However, the statistics collected in this article were not offered in evidence in the trial court and on this appeal we cannot accept them as true and accurate. Nor do we take judicial notice of the records of the Virginia State Penitentiary or other records referred to in the article. If reliance were to be made upon such records as proof of the alleged discriminatory application of the statute, they should have been offered in evidence and made a part of the record in the court below.[3]

In *Hampton* v. *Commonwealth*, 190 Va. 531, 58 S. E. 2d 288 (1950) (cert. denied 339 U. S. 989, 70 S. Ct. 1013), we rejected a similar contention of the alleged discriminatory application of this statute with respect to Negroes, pointing out that the record in the trial court was devoid of evidence of such alleged discrimination. 190 Va. at 554, 58 S. E. 2d at 298.

In *Maxwell* v. *State*, 236 Ark. 694, 370 S. W. 2d 113 (1963), the Supreme Court of Arkansas had occasion to inquire into a similar allegation of the discriminatory application of the death penalty statute of that State as applied to Negro men convicted of rape of white women. The opinion discloses that in support of the alleged discrimination the defendant offered in evidence statistics showing the imposition of the death penalty on white and Negro defendants respectively. On consideration of such evidence it was held that the charge of the alleged discrimination had not been proven. In the further proceedings of *Maxwell* v. *Stephens, Sup't,* 348 F. 2d 325 (8th Cir. 1965), the Court of Appeals affirmed the decision of the United States District Court denying a writ of habeas corpus to the same defendant based upon the alleged discriminatory application of the statute. That opinion likewise discloses that this conclusion was reached after a full consideration of evidence which had been adduced in support of the allegation.

---

[3] Incidentally, we know from the records of our own court, of which we take judicial notice (*Cunningham* v. *Hayes,* 204 Va. 851, 857, 134 S. E. 2d 271, 275 (1964)), that a writ of error was denied in the case of *Snider* v. *Commonwealth,* 198 Va. lxxix (1956), in which the death penalty was imposed upon a white man convicted of rape of a child. Subsequent post-conviction proceedings in the federal courts have deferred the execution of this sentence.

In the present case, since, as we have said, the record is devoid of any evidence tending to show the alleged discriminatory application of the statute, this assignment of error is overruled.

The judgments are

*Affirmed.*