COURT OF APPEALS OF VIRGINIA

Present:  Judges Bray, Frank and Clements
Argued at Chesapeake, Virginia


KENNETH RAY HORNE

                                        MEMORANDUM OPINION[*] BY
v.    Record No. 2692-00-1              JUDGE RICHARD S. BRAY
                                           DECEMBER 4, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                        Verbena M. Askew, Judge

               (Janice G. Murphy, on brief), for appellant.
               Appellant submitting on briefs.

               Eugene Murphy, Assistant Attorney General
               (Randolph A. Beales, Acting Attorney General,
               on brief), for appellee.


     Kenneth Ray Horne (defendant) was convicted in a bench trial

of statutory burglary in violation of Code § 18.2-91.  On appeal,

he challenges the sufficiency of the evidence to support the

conviction and complains the trial court erroneously failed to

order a "competency evaluation" pursuant to Code § 19.2-169.1(A).

For the reasons that follow, we affirm the trial court.

     The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

In reviewing the sufficiency of the evidence on appeal, we review the record in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The judgment of the trial court will be disturbed only if plainly wrong or without evidence to support it. See id.

## I.

At approximately 3:00 p.m. on March 29, 2000, Patricia Fritz heard her dog "growling and howling . . . at the door to [the] detached garage" at her residence. Investigating, she opened the "closed and locked" door, entered the garage and observed "a gentleman . . . crouching on the floor around the corner from the door." The intruder "stood up and put his hands up in a submissive gesture," declaring, "I don't want to hurt you . . . I just want to leave." Fritz immediately "backed out of the garage," followed by the man. Once "outside in the daylight," he "looked straight at [Fritz]" for several seconds, again stated, "he just wanted to leave," and, as Fritz watched, fled "over the privacy fence in the back" of her yard.

Fritz immediately summoned Newport News police and described the intruder to Detective Cheryl M. Phillips as a "[b]lack male approximately 5'11" and 150 pounds," "light-complected [sic]," with a "thin moustache," "wearing a dark blue sweatshirt and work

-

pants."  In reporting the incident, Fritz also noted "a bicycle and a heat gun" missing from the garage.

Approximately one month later, on May 1, 2000, while responding to an unrelated "burglary call," Detective Phillips observed defendant "pop out of the field" and "wav[e] at [her]." Noting he was clothed in "a sweatsuit, dark navy blue sweatsuit," apparel consistent with the description previously provided by Fritz, Phillips "stopp[ed]" defendant, requested identification and, upon learning of "outstanding warrants," arrested him.

With defendant in custody, Phillips telephoned Fritz, advised "[s]he had stopped someone that . . . fit [Fritz's] description" of the intruder and requested Fritz accompany her to a "show-up to see if [Fritz] could identify him as the man . . . observed in her shed."  Fritz agreed and Phillips transported her to the scene of arrest, where defendant was "standing next to a police car" with a uniformed police officer, and Fritz identified him as the perpetrator.

When later called as a witness for the Commonwealth at trial, on September 27, 2000, the prosecutor asked Fritz to "tell us about [the show-up]," and, in a narrative response, she volunteered, "[a]t the time [she] was sure that [defendant] was" the man in her garage on March 29, 2000.  (Emphasis added.)  No further identification evidence was elicited from the witness by

-

the prosecutor.  Thus, as the Commonwealth concedes, "Fritz did not . . . identify [defendant] in court" as the intruder.[1]

Accordingly, defendant challenged the sufficiency of the Commonwealth's evidence, arguing to the trial court that "there has been no, in-court, identification of [the defendant]" and, even "[i]f there had been, then . . . [Fritz was only] identifying the person that was pointed out to her at the show-up."[2] Defendant further argued that the evidence was insufficient to establish the requisite "breaking" and "intent to commit larceny" elements of burglary.  The court dismissed the grand larceny charge, but convicted defendant of burglary, resulting in the instant appeal.

II.

A.

To sustain a conviction, the Commonwealth's evidence must identify the accused as the criminal actor beyond a reasonable doubt.  Brickhouse v. Commonwealth, 208 Va. 533, 536, 159 S.E.2d 611, 613-14 (1968).

---

[1] Defendant's argument that defendant was not identified at trial as the suspect presented to Fritz at the earlier "show-up" is belied by the record.  The testimony of Detective Phillips clearly referenced "the defendant," then present in court, as the person arrested and identified by Fritz, and the trial court noted for the record that Phillips had "actually pointed to [defendant]."

[2] Defendant does not challenge the admissibility of the show-up identification.

-

> "An out-of-court identification is
> admissible if either (1) the identification
> was not unduly suggestive; or (2) the
> procedure was unduly suggestive, but the
> identification was so reliable that there is
> no substantial likelihood of
> misidentification."  Show-up identifications
> are not per se violative of constitutional
> rights, and such identifications will not be
> declared invalid unless a review of the
> totality of the circumstances shows a
> substantial likelihood of misidentification.

Dance v. Commonwealth, 32 Va. App. 466, 471-72, 528 S.E.2d 723, 726 (2000) (citations omitted).  Thus, pretrial identifications, "when considered with all the other circumstances in the case," may sufficiently establish the evidence of identity necessary to sustain a conviction.  Martin v. Commonwealth, 210 Va. 686, 692, 173 S.E.2d 794, 799 (1970).

In Neil v. Biggers, 409 U.S. 188 (1972), the United States Supreme Court enunciated five factors relevant to a reliability assessment of an out-of-court identification:

> the opportunity of the witness to view the
> criminal at the time of the crime, the
> witness' degree of attention, the accuracy
> of the witness' prior description of the
> criminal, the level of certainty
> demonstrated by the witness at the
> confrontation, and the length of time
> between the crime and the confrontation.

Id. at 199-200; see Dance, 32 Va. App. at 472, 528 S.E.2d at 726.

Here, application of the several factors in a Biggers analysis clothes Fritz's show-up identification with sufficient reliability to prove defendant was the man discovered in her

-

garage.  Fritz observed the intruder, face to face, during daylight hours, both inside and outside of her garage, and exchanged words with him during the encounter, circumstances that permitted an unobstructed and focused view of the man.  Her description of him to police immediately following the incident was sufficiently detailed, both in physical characteristics and dress, to prompt later recognition of defendant by Detective Phillips.  In the subsequent show-up, Fritz was "sure" defendant was the man she had confronted one month earlier on her property, and the intervening time clearly had not dulled her recollection.  Thus, considered in totality, Fritz's extra-judicial identification was sufficient to prove guilt beyond a reasonable doubt.[3]

B.

Defendant next contends the evidence was insufficient to establish a "breaking."  We disagree.

> "Breaking, as an element of the crime of burglary, may be either actual or constructive . . . .  Actual breaking involves the application of some force, slight though it may be, whereby the entrance is effected.  Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is

---

[3] Defendant's reliance upon Smallwood v. Commonwealth, 14 Va. App. 527, 418 S.E.2d 567 (1992), is misplaced.  In Smallwood, the Biggers factors were applied to find unreliable a witness' equivocal identification of the accused at trial, when considered in the context of limited opportunity to view the offender at the time of the offense and inconsistent descriptions.

-

        sufficient to constitute this element of the
        crime."

Bright v. Commonwealth, 4 Va. App. 248, 252, 356 S.E.2d 443, 445

(1987) (quoting Johnson v. Commonwealth, 221 Va. 872, 876, 275

S.E.2d 592, 594-95 (1981)).

Here, Fritz testified that the garage was "secured," the

door "closed and locked," immediately before she discovered the

intruder "crouching" inside.  Such evidence, viewed in the light

most favorable to the Commonwealth, was clearly sufficient to

prove the requisite "breaking" had attended the unlawful entry.

C.

Defendant further challenges the sufficiency of the

evidence to prove the necessary "intent to commit larceny."

Again, we disagree.

"[W]hen an unlawful entry is made into [the] dwelling of

another, the presumption is that the entry was made for an

unlawful purpose, and the specific intent with which such entry

was made may be inferred from the surrounding facts and

circumstances."  Ridley v. Commonwealth, 219 Va. 834, 836, 252

S.E.2d 313, 314 (1979).  Thus, "[i]n the absence of evidence

showing a contrary intent, the trier of fact may infer that a

defendant's unauthorized presence in [the] house or building of

another . . . was with the intent to commit larceny."  Id. at

837, 252 S.E.2d at 314.

-

Defendant broke and entered a residential garage belonging to Fritz, which then contained considerable personal property. Fritz discovered "a bicycle and a heat gun" missing from the garage immediately after the intruder was discovered and had fled. Thus, the circumstances, again viewed in the light most favorable to the Commonwealth, sufficiently established that defendant intended "to commit larceny" when he entered the structure.

## III.

Lastly, defendant contends he was entitled to a second competency evaluation, despite an initial examination that declared him competent for trial. Defendant requested no second evaluation, a related continuance or similar relief. To the contrary, his counsel assured the trial court, "[Defendant] advised me that he wants to go ahead with his trial date." Defendant cannot "'approbate and reprobate . . . invite error . . . and . . . take advantage of the situation created by his own wrong.'" Manns v. Commonwealth, 13 Va. App. 677, 680, 414 S.E.2d 613, 615 (1992) (quoting Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988)). Thus, the court, by acceding to defendant's request, committed no reversible error.

Accordingly, we find no error in the proceedings below and affirm the conviction.

Affirmed.

-