COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, Beales and Huff
Argued at Chesapeake, Virginia


HARVEY EUGENE SMITH, JR., S/K/A
 HARVEY EUGENE WILLIAMS, JR.

v.     Record No. 1266-12-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
DECEMBER 17, 2013


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Bruce H. Kushner, Judge

Diallo K. Morris (Black & James, P.C., on brief), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


In a bench trial, the trial court convicted Harvey Eugene Smith, Jr. (appellant) of malicious

wounding, in violation of Code § 18.2-51, and attempted robbery, in violation of Code §§ 18.2-26

and 18.2-58. On appeal, appellant challenges the sufficiency of the evidence supporting these

convictions. However, we affirm appellant's convictions for the following reasons.

I. BACKGROUND

We consider "the evidence in the light most favorable to the Commonwealth, as we must

since it was the prevailing party" in the trial court. Riner v. Commonwealth, 268 Va. 296, 330,

601 S.E.2d 555, 574 (2004). On November 14, 2010, the victim walked behind a shopping

center along a path – or a "cut," as the victim described it at trial – in the direction of a friend's

house. While walking along the "cut," the victim stated that he was struck from behind and then

beaten for ten to fifteen minutes. According to the victim, three people hit him repeatedly and

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the same three people then felt inside his pockets for money or something else of value. Because the victim's pockets were empty, nothing was taken from him. The victim then rushed to the home of his friend, whose parents immediately called the authorities upon seeing the victim's condition. Among the victim's injuries were a "busted" lip, chipped and damaged teeth, a swollen face that required stitches, and eyes that actually hemorrhaged blood. When the police arrived, the victim told Officer Antonio Spruill that three people attacked him, including a person with dreadlocks named Harvey.

The victim, who was then a student at a high school in the City of Chesapeake, was admitted to the hospital on November 14, 2010 and did not actually return to school until two weeks later. Upon his return to school, the victim met with Officer C. Collins, the high school's resource officer. The victim told Officer Collins that one of his assailants was a fellow student at the high school whom the victim knew as "Little Harvey." The victim stated that he and "Little Harvey" had been in the same physical education class about two years before the attack on the victim. During the meeting with Officer Collins, the victim identified the faces of his assailants after looking at pictures from school yearbooks. Pointing to a picture of appellant, the victim told Officer Collins that appellant was "Little Harvey" – one of the perpetrators on November 14, 2010. The victim also pointed to the pictures of Sharron Johnson and Jabre Bell, indicating that those were the other two perpetrators.

At appellant's bench trial on the charges of malicious wounding and attempted robbery, the victim testified that he saw only four people walking along the "cut" on November 14, 2010. According to the victim, the first person was a lone male, whom the victim passed by upon entering the "cut." The victim testified that this particular person left the area of the "cut" and was not seen again by the victim. Continuing to walk along the "cut," the victim then saw a group of three males walking toward him. The victim testified that he immediately recognized

- 2 -

"Little Harvey" as one of these people – and he also identified appellant as "Little Harvey" at trial. The victim testified that these three males continued to approach the victim and then walked past him. However, the victim's attention was raised when he overheard a comment as they passed by him. The victim testified, "As I was walking past them, I kind of picked up on Mr. Johnson saying something to [appellant]." Without objection, the victim further testified that the comment he overheard "wasn't directed to me, but it was speaking of me."

The victim explained at trial that, after appellant and the other two males passed by him, "I heard them sneaking up on me. They were already sneaking up on me." However, before he could turn around and clearly see who was approaching him from behind, the victim was then attacked from behind. Nevertheless, the victim could detect the "shadows" of his three attackers. As the victim described during direct examination:

> I then proceeded to turn around to identify who it was behind me. I saw three shadows of three people standing behind me, Mr. Bell, Mr. Smith [i.e., appellant], and Mr. Johnson, and I was struck in the jaw to prevent me from turning around to identify who was behind me.

"After that I blacked out," the victim's testimony continued, "and I was repeatedly struck."

Although he was knocked unconscious by the first punch, the victim asserted at trial that he was able to regain some awareness of his surroundings during the course of the attack against him and that he was never actually "confused" while he was being beaten. The victim testified that he could feel punches thrown from "every which way," that three people were beating him, that he was being pushed back to the ground every time he tried to stand, and that the beating lasted ten to fifteen minutes.

In addition, the victim testified that, when he was finally able to get to his feet, his "pockets were checked." The victim explained that he felt "people sticking their hands in my

pockets" and "[r]ummaging for money" or something else of value. However, the victim testified that nothing was taken from his pockets because nothing was in them. Pertinent to this appeal, the prosecutor asked the victim whether the people who put their hands in his pockets were "the same people that attacked" him. The victim responded, "Yes."

Officer Spruill testified that he interviewed the victim on November 14, 2010. According to Officer Spruill, the victim told him that he was attacked by three males between the ages of seventeen and twenty who were wearing black – focusing on "one subject having dreads and going by the name of Harvey." Officer Collins testified that she was familiar with a student at the high school known as "Little Harvey," identifying appellant as that person. Officer Collins also testified that, before the victim actually began identifying the yearbook pictures of the assailants, the victim told her that "Little Harvey" was one of the assailants. Officer Collins explained that she gave the victim no directions and "didn't help him at all" as the victim was identifying yearbook pictures of his assailants. Instead, the victim "went right through it and picked out those pictures." Officer Collins testified that the victim pointed to a picture of "Little Harvey, Harvey Smith."

II. ANALYSIS

On appeal, appellant raises four assignments of error – all challenging the sufficiency of the evidence supporting his convictions for malicious wounding and attempted robbery.[1] When the sufficiency of the evidence is challenged on appeal, "a reviewing court does not 'ask itself whether

_____

[1] Concerning appellant's malicious wounding conviction, Code § 18.2-51 states, "If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony." Concerning appellant's attempted robbery conviction, Code § 18.2-58 states, in relevant part, "If any person commit robbery . . . by striking or beating, or by other violence to the person, . . . he shall be guilty of a felony and shall be punished by confinement in a state correctional facility for life or any term not less than five years." Code § 18.2-26(1) in turn states, "If the felony attempted is punishable by a maximum punishment of life imprisonment or a term of years in excess of twenty years, an attempt thereat shall be punishable as a Class 4 felony."

*it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, 601 S.E.2d at 574, "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

A. VICTIM'S IDENTIFICATION OF APPELLANT AS A PERPETRATOR

In his first assignment of error, appellant argues that the victim's identification of him as one of the perpetrators on November 14, 2010 was insufficient to support his convictions for malicious wounding and attempted robbery. "'At trial, the Commonwealth bears the burden of proving the identity of the accused as [a] perpetrator beyond a reasonable doubt.'" Cuffee v. Commonwealth, 61 Va. App. 353, 364, 735 S.E.2d 693, 698 (2013) (quoting Blevins v. Commonwealth, 40 Va. App. 412, 423, 579 S.E.2d 658, 663 (2003)); see Brickhouse v. Commonwealth, 208 Va. 533, 536, 159 S.E.2d 611, 613-14 (1968). "The factors set forth in Neil v. Biggers, 409 U.S. 188 (1972), are used to determine 'whether the identification evidence is sufficient, standing alone or in combination with other evidence, to prove beyond a reasonable doubt' the identity of the perpetrator." Cuffee, 61 Va. App. at 364, 735 S.E.2d at 698 (quoting Brown v. Commonwealth, 37 Va. App. 507, 522, 559 S.E.2d 415, 423 (2002)).

> "[T]he factors to be considered in evaluating the likelihood of
> misidentification include the opportunity of the witness to view the

criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

Cuffee, 61 Va. App. at 364, 735 S.E.2d at 698-99 (quoting Biggers, 409 U.S. at 199-200).

"Whether an identification is reliable 'depends on the totality of the circumstances.'" Brown, 37

Va. App. at 523, 559 S.E.2d at 423 (quoting Satcher v. Commonwealth, 244 Va. 220, 249, 421

S.E.2d 821, 839 (1992)).

In this case, appellant argues that the victim's identification of him as a perpetrator on

November 14, 2010 is insufficient because the victim acknowledged at trial that he never

actually saw appellant strike him or feel through the victim's pockets.[2] Of course, the victim

also testified that he was attacked from behind, that he was knocked unconscious by that first

punch from behind, and that he was being beaten by three people throwing punches from "every

which way" when he regained consciousness. The victim's opportunity to view his attackers

was limited – due to the very nature of the attack. However, the victim did testify that he saw

"the shadows of three people standing behind me, Mr. Bell, Mr. Smith, and Mr. Johnson," before

the victim was struck from behind with the first punch. Thus, the record supports the inference

the victim was not completely unable to witness his attackers as the crime began. See Biggers,

409 U.S. at 199. Furthermore, as the trial court here noted, the reliability of the victim's

identification of appellant as a perpetrator was proven through several *other* circumstances in the

_____

[2] In addition, appellant points to inconsistencies in the victim's testimony pertaining to the victim's recollection of how much time elapsed from when appellant's group passed by the victim and when the victim was attacked from behind, as well as what appellant was wearing on November 14, 2010. However, the credibility of the victim's testimony and the weight to be accorded it were solely matters for the trial court (acting as the factfinder here), as the trial court had "the opportunity to see and hear that evidence as it [was] presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 731 (1995). Indeed, when a witness' identification of a defendant is challenged on appeal, inconsistencies in the witness' testimony generally "go toward the [factfinder's] weighing of the credibility of the witnesses, a matter within its sound discretion." Cuffee, 61 Va. App. at 366, 735 S.E.2d at 699.

record.  See Cuffee, 61 Va. App. at 364, 735 S.E.2d at 699 (explaining that, while the witness was not "[one] hundred percent" certain that the defendant was the shooter, other aspects of her testimony corroborated her identification of the defendant as the shooter); see also Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979) (explaining that the "combined force of many concurrent and related circumstances" may "lead a reasonable mind irresistibly to a conclusion" (internal quotation marks and citation omitted)).

Viewing the evidence in the light most favorable to the Commonwealth, as we must because it was the prevailing party below, ample circumstances in the record on appeal support the trial court's finding that the victim reliably identified appellant as one of the perpetrators from November 14, 2010.  The victim was familiar with appellant from high school, where both the victim and Officer Collins testified that appellant was known as "Little Harvey."  The victim testified (and the trial court found) that the person he recognized as "Little Harvey" was part of a group of *three* males who walked past him while the victim walked along a path -- or "cut" -- behind a shopping center in the direction of a friend's house.  According to the victim's testimony, which the trial court accepted as credible, the victim was still walking along the "cut" when he was attacked from behind – and was then beaten for as long as fifteen minutes by *three* males.

The evidence does not disclose any other person who could have participated in the attack on the victim – given the victim's testimony that he saw only a total of four people walking in the "cut" on November 14, 2010.  The trial court considered, but ultimately rejected, the suggestion by appellant's counsel that the fourth person the victim saw in the "cut" could have been involved.  Indeed, the victim's testimony established that this unknown person completely exited the "cut" about the time the victim entered it – and before the victim encountered appellant and the other two males.  Nothing in the record even hints that this

- 7 -

unknown person assembled with two other people to form the three-person group that attacked and beat the victim so brutally. See Fordham v. Commonwealth, 13 Va. App. 235, 239, 409 S.E.2d 829, 831 (1991) (explaining that hypotheses of innocence must flow from the evidence).

Furthermore, the victim testified that he overheard a comment from Johnson to appellant – and the victim also testified, without objection, that he interpreted this comment as being about him. Thus, the record supports an inference that these three males (including appellant) did not merely walk past the victim – but instead specifically turned their attention to the victim. See Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 64 (2010) (explaining that the deference given to the factfinder on appeal "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved"). Given this reasonable inference, a rational factfinder could conclude based on all the evidence admitted at trial that appellant was one of the perpetrators on November 14, 2010.

Indeed, the victim promptly told Officer Spruill on November 14, 2010 that one of the assailants had dreadlocks and was named Harvey. The victim also told Officer Collins upon the victim's return to school two weeks later that "Little Harvey" was one of the assailants. The victim pointed to a yearbook picture of appellant, stating that appellant was "Little Harvey." Moreover, the victim continually reasserted appellant's culpability at trial, at one point testifying plainly, "I know it was him." See Satcher, 244 Va. at 250, 421 S.E.2d at 839 (explaining that an in-court identification that was "unequivocally positive" was of "most significance"); see also Biggers, 409 U.S. at 199-200.

Therefore, given all of these facts and inferences supported by the record, "each mounting upon the others," Ervin v. Commonwealth, 57 Va. App. 495, 505, 704 S.E.2d 135, 140 (2011) (en banc), we conclude that the trial court's finding that appellant was one of the

perpetrators on November 14, 2010 was supported by the record on appeal.  See Code

§ 8.01-680.

### B.  ACCOMPLICE LIABILITY

In his second assignment of error, appellant argues that the evidence at trial was

insufficient to prove that he was an accomplice or principal in the second degree of either

malicious wounding or attempted robbery.

> A principal in the first degree is the actual perpetrator of the crime.
> A principal in the second degree, or an aider or abettor as he is
> sometimes termed, is one who is present, actually or
> constructively, assisting the perpetrator in the commission of the
> crime.  In order to make a person a principal in the second degree
> actual participation in the commission of the crime is not
> necessary.  The test is whether or not he was encouraging, inciting,
> or in some manner offering aid in the commission of the crime.  If
> he was present lending countenance, or otherwise aiding while
> another did the act, he is an aider and abettor or principal in the
> second degree.

Muhammad v. Commonwealth, 269 Va. 451, 482, 619 S.E.2d 16, 33 (2005).  "Generally in

Virginia, a principal in the second degree is subject to the same punishment as the principal in

the first degree."  Id.; see Code § 18.2-18.

At trial, the prosecutor argued in the alternative that the three perpetrators identified by

the victim – appellant, Johnson, and Bell – engaged in a "[c]oncert of action" and that it did not

matter whether appellant actually punched the victim or placed his hands in the victim's pockets.

The trial court did not expressly make a finding on the Commonwealth's alternative theory of

accomplice liability – and we need not and do not address this issue here.  On direct

examination, the victim implicated all three suspects as principals in the first degree to both

charged offenses, testifying:

Q:  How many people attacked you?

A:  *Three.*

Q: And you tried to get up?

A: Yes, I tried to get up and got pushed back down on the ground, and then I was beat for another 10 or 15 minutes, and then I happened to get up. That's when my pockets were checked.

Q: [What] do you mean your pockets were checked?

A: Rummaging for money or –

\* \* \* \* \* \* \*

Q: And was it *the same three people that attacked you*?

A: *Yes.* It was directly after my attack.[3]

(Emphasis added). Furthermore, the victim also testified on cross-examination that he "felt *people* putting hands in my pockets." (Emphasis added).

Therefore, viewing the victim's testimony in the light most favorable to the Commonwealth, as we must since the Commonwealth prevailed below, a rational factfinder could conclude that appellant was one of three people who acted as a principal in the first degree. For this reason, we need not and do not consider whether the evidence could also support a theory of prosecution that appellant acted as a principal in the second degree.

### C. INTENT TO COMMIT ATTEMPTED ROBBERY

In his third assignment of error, appellant argues that the evidence failed to prove the specific intent to commit robbery, as was required for an attempted robbery conviction.

> In Virginia, robbery is a common law crime defined as the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation. Attempted robbery, also a common law offense, requires the Commonwealth to prove beyond a reasonable doubt that the defendant intended to steal personal property from the victim, against his will, by force, violence, or intimidation. Additionally, the Commonwealth must prove beyond a reasonable

---

[3] Appellant never argued in the trial court that the evidence proved an attempted larceny, rather than an attempted robbery, of the victim. See Rule 5A:18.

doubt that the defendant committed a direct, but ineffectual, act to accomplish the crime.

Jay v. Commonwealth, 275 Va. 510, 524-25, 659 S.E.2d 311, 319 (2008) (internal quotation marks and citations omitted).

On brief, appellant argues that "there were no words expressing an intent to rob uttered by any person who encountered" the victim, and he asserts the "only evidence presented at trial was that [the victim] was beaten and then he felt hands going through his pockets." Appellant argues that "an intention to steal" could not be established without "evidence of a demand for money or any other property possessed by" the victim or "evidence of any plan or agreement to rob" the victim. We disagree.

The Supreme Court has explained that, even if "it is possible to surmise or imagine" that the defendant "had some other purpose" than robbery, the factfinder's conclusion that the defendant intended to commit robbery will not be overturned so long as the conclusion was "reasonable and justified" based on the facts of the case. Johnson v. Commonwealth, 209 Va. 291, 295, 163 S.E.2d 570, 574 (1968); see also Black v. Commonwealth, 222 Va. 838, 841, 284 S.E.2d 608, 609 (1981) ("The fact finder may draw reasonable inferences from the evidence that the perpetrator intended to commit one felony rather than another."). Based on the victim's testimony, a rational factfinder could conclude that appellant was one of three people who participated in a beating of the victim that lasted as long as fifteen minutes – and that these same three people (including appellant) then placed their hands in the victim's pockets at the conclusion of this attack. The victim testified that he felt these people "[r]ummaging for money" or something else of value. The trial court was entitled to accept this testimony as credible and give it significant weight among the totality of the circumstances.

Thus, the trial court could reasonably conclude that the three perpetrators' act of placing their hands in the victim's pockets was not simply "an incidental, probable consequence" of the

- 11 -

attack on the victim. McMorris v. Commonwealth, 276 Va. 500, 508, 666 S.E.2d 348, 352 (2008). Indeed, a rational factfinder could agree with the trial court here that the act of "[r]ummaging for money" or something else of value was evidence of the specific intent to rob the victim – albeit unsuccessfully, given the victim had nothing in his pockets. Accordingly, the evidence was sufficient beyond a reasonable doubt to convict appellant of attempted robbery.

## D. INTENT TO COMMIT MALICIOUS WOUNDING

In his fourth assignment of error, appellant argues that the evidence failed to prove the requisite intent to commit malicious wounding. "To be guilty [of malicious wounding] under Code § 18.2-51, a person must intend to permanently, not merely temporarily, harm another person." Johnson v. Commonwealth, 53 Va. App. 79, 101, 669 S.E.2d 368, 378 (2008). "Intent is the purpose formed in a person's mind at the time an act is committed," and the "question of whether a defendant possessed the requisite intent normally rests with the finder of fact." Id. at 100-01, 669 S.E.2d at 378 (internal quotation marks and citations omitted).

In support of his argument that the evidence failed to prove the required intent for malicious wounding, appellant emphasizes the victim's testimony that he was struck with "just fists." See Lee v. Commonwealth, 135 Va. 572, 578, 115 S.E. 671, 673 (1923) (explaining that, if the defendant "only used his fist, then there would be no presumption from that fact alone that he intended to permanently disfigure his adversary"). However, as this Court observed in Johnson, longstanding precedent from the Supreme Court of Virginia "makes clear a person may be found to have intended permanent harm by an attack with fists where the assailant employs sufficient brutality." Johnson, 53 Va. App. at 101, 669 S.E.2d at 378. Indeed, the Supreme Court recently cited with approval this Court's 2008 holding in Johnson that evidence of "*only one blow* with a closed fist" can, when considered with the totality of the circumstances, support

a conviction for malicious wounding under Code § 18.2-51. Burkeen v. Commonwealth, ___ Va. ___, ___, 749 S.E.2d 172, 176 (2013) (emphasis added).

The Supreme Court in Burkeen explained, "It is proper for a court to consider not only the method by which a victim is wounded, but also the circumstances under which that injury was inflicted in determining whether there is sufficient evidence to prove an intent to maim, disfigure, disable or kill." Id. at ___, 749 S.E.2d at 175. Here, the victim was attacked – unprovoked – and beaten with such force and brutality that his eyes actually hemorrhaged blood. The beating caused the victim to miss two weeks of school, and he also testified that, due to "the trauma and severity that I suffered from my attack, I resigned from work." Even by the time of trial, nine months later, the victim's smile was "just destroyed" because of the injuries he sustained during the attack and beating on November 14, 2010. On this record, a rational factfinder certainly could find that appellant committed malicious wounding under Code § 18.2-51.

### III. CONCLUSION

The evidence at trial was sufficient beyond a reasonable doubt to convict appellant of malicious wounding and attempted robbery. Accordingly, for the foregoing reasons, we affirm those convictions.

Affirmed.